

# OKLAHOMA
## State Courts Network

The information on this page is NOT an official record. Do not rely on the correctness or completeness of this information. Verify all information with the official record keeper. The information contained in this report is provided in compliance with the Oklahoma Open Records Act, 51 O.S. 24A.1. Use of this information is governed by this act, as well as other applicable state and federal laws.

## IN THE DISTRICT COURT IN AND FOR <u>TULSA COUNTY</u>, OKLAHOMA

ROMA PRESLEY,
    Plaintiff, and
ESTATE OF JOSHUA WAYNE HARVEY,
    Plaintiff,

v.

CITY OF TULSA,
    Defendant, and
NIGEL HARRIS,
    Defendant, and
STEVEN DOUGLAS,
    Defendant, and
JAYE TAYLOR,
    Defendant, and
PATRICK DUNLAP,
    Defendant, and
CHARLES JORDAN,
    Defendant, and
AMERICAN MEDICAL RESPONSE AMBULANCE
SERVICE INC,
    Defendant.

**No. CJ-2020-1518**
**(Civil relief more than $10,000: CIVIL RIGHTS)**

Filed: 05/05/2020

Judge: Civil Docket B

# PARTIES

AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE INC, Defendant
CITY OF TULSA, Defendant
DOUGLAS, STEVEN, Defendant
DUNLAP, PATRICK, Defendant
ESTATE OF JOSHUA WAYNE HARVEY, Plaintiff
HARRIS, NIGEL, Defendant
JORDAN, CHARLES, Defendant
PRESLEY, ROMA, Plaintiff
TAYLOR, JAYE, Defendant



EXHIBIT

_A_

# ATTORNEYS

| Attorney | Represented Parties |
|---|---|
| Cephas, Cordal (Bar #33857)<br>JOHNSON CEPHAS LAW PLLC<br>3939 S HARVARD AVE<br>SUITE 238<br>TULSA, OK 74135 | ESTATE OF JOSHUA WAYNE HARVEY,<br>PRESLEY, ROMA |
| CLARK, NATHAN E (Bar #17275)<br>2 WEST 2ND ST., STE. 1000<br>PO BOX 21100<br>TULSA, OK 74121 | AMERICAN MEDICAL RESPONSE AMBULANCE<br>SERVICE INC, |
| SOLOMON SIMMONS, DAMARIO (Bar #20340)<br>601 S BOULDER AVE SUITE 600<br>TULSA, OK 74119 | PRESLEY, ROMA<br>ESTATE OF JOSHUA WAYNE HARVEY, |

# EVENTS

None

# ISSUES

For cases filed before 1/1/2000, ancillary issues may not appear except in the docket.

**Issue # 1.**   Issue: CIVIL RIGHTS (OTHER)
Filed By: PRESLEY, ROMA
Filed Date: 05/05/2020

| Party Name | Disposition Information |
|---|---|
| **Defendant:** CITY OF TULSA | |
| **Defendant:** HARRIS, NIGEL | |
| **Defendant:** DOUGLAS, STEVEN | |
| **Defendant:** TAYLOR, JAYE | |
| **Defendant:** DUNLAP, PATRICK | |
| **Defendant:** JORDAN, CHARLES | |
| **Defendant:**<br>AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE INC | |

**Issue # 2.**       Issue: CIVIL RIGHTS (OTHER)
                     Filed By: ESTATE OF JOSHUA WAYNE HARVEY
                     Filed Date: 05/05/2020

| Party Name | Disposition Information |
|---|---|
| **Defendant:** CITY OF TULSA | |
| **Defendant:** HARRIS, NIGEL | |
| **Defendant:** DOUGLAS, STEVEN | |
| **Defendant:** TAYLOR, JAYE | |
| **Defendant:** DUNLAP, PATRICK | |
| **Defendant:** JORDAN, CHARLES | |
| **Defendant:** AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE INC | |

# DOCKET

| Date | Code | Description | Count | Party | Amount |
|---|---|---|---|---|---|
| 05-05-2020 | TEXT | CIVIL RELIEF MORE THAN $10,000 INITIAL FILING. | 1 | | |
| 05-05-2020 | OTHER | CIVIL RIGHTS | | | |
| 05-05-2020 | DMFE | DISPUTE MEDIATION FEE | | | $ 7.00 |
| 05-05-2020 | PFE1 | PETITION Document Available (#1046550184) 📄 TIFF  📄 PDF | | | $ 163.00 |
| 05-05-2020 | PFE7 | LAW LIBRARY FEE | | | $ 6.00 |
| 05-05-2020 | OCISR | OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND | | | $ 25.00 |
| 05-05-2020 | OCJC | OKLAHOMA COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND | | | $ 1.55 |
| 05-05-2020 | OCASA | OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES | | | $ 5.00 |
| 05-05-2020 | SSFCHSCPC | SHERIFF'S SERVICE FEE FOR COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER | | | $ 10.00 |
| 05-05-2020 | CCADMINCSF | COURT CLERK ADMINISTRATIVE FEE ON COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER | | | $ 1.00 |

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 05-05-2020 | CCADMIN0155 | COURT CLERK ADMINISTRATIVE FEE ON $1.55 COLLECTION | | | $ 0.16 |
| 05-05-2020 | SJFIS | STATE JUDICIAL REVOLVING FUND - INTERPRETER AND TRANSLATOR SERVICES | | | $ 0.45 |
| 05-05-2020 | DCADMIN155 | DISTRICT COURT ADMINISTRATIVE FEE ON $1.55 COLLECTIONS | | | $ 0.23 |
| 05-05-2020 | DCADMIN05 | DISTRICT COURT ADMINISTRATIVE FEE ON $5 COLLECTIONS | | | $ 0.75 |
| 05-05-2020 | DCADMINCSF | DISTRICT COURT ADMINISTRATIVE FEE ON COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER | | | $ 1.50 |
| 05-05-2020 | CCRMPF | COURT CLERK'S RECORDS MANAGEMENT AND PRESERVATION FEE | | | $ 10.00 |
| 05-05-2020 | CCADMIN04 | COURT CLERK ADMINISTRATIVE FEE ON COLLECTIONS | | | $ 0.50 |
| 05-05-2020 | LTF | LENGTHY TRIAL FUND | | | $ 10.00 |
| 05-05-2020 | COPY | COPIES CHARGED | | | $ 18.50 |
| 05-05-2020 | TEXT | OCIS HAS AUTOMATICALLY ASSIGNED JUDGE CIVIL DOCKET B TO THIS CASE. | | | |
| 05-05-2020 | ADJUST | ADJUSTING ENTRY: MONIES DUE TO AC09-CARD ALLOCATION | | | $ 0.67 |
| 05-05-2020 | ACCOUNT | ADJUSTING ENTRY: MONIES DUE TO THE FOLLOWING AGENCIES REDUCED BY THE FOLLOWING AMOUNTS: CJ-2020-1518: AC01 CLERK FEES -$0.67 | | | |

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 05-05-2020 | ACCOUNT | RECEIPT # 2020-4088933 ON 05/05/2020.<br>PAYOR: D SIMMONS TOTAL AMOUNT PAID: $ 26.64.<br>LINE ITEMS:<br>CJ-2020-1518: $25.97 ON AC01 CLERK FEES.<br>CJ-2020-1518: $0.67 ON AC09 CARD ALLOCATIONS. | | | |
| 06-02-2020 | EAA | DEFENDANT AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE INC'S SPECIAL APPEARANCE AND RESERVATION OF ADDITIONAL TIME TO ANSWER OR OTHERWISE PLEAD / COVER SHEET<br>Document Available (#1046667398)<br>📄TIFF   📄PDF | | AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE INC | |
| 06-02-2020 | ADJUST | ADJUSTING ENTRY: MONIES DUE TO AC09-CARD ALLOCATION | | | $ 5.85 |

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 06-02-2020 | ACCOUNT | ADJUSTING ENTRY: MONIES DUE TO THE FOLLOWING AGENCIES REDUCED BY THE FOLLOWING AMOUNTS:<br>CJ-2020-1518: AC89 COURT CLERK'S RECORDS MANAGEMENT AND PRESERVATION FEE -$0.25<br>CJ-2020-1518: AC88 SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY -$0.25<br>CJ-2020-1518: AC81 LENGTHY TRIAL FUND -$0.25<br>CJ-2020-1518: AC79 OCIS REVOLVING FUND -$0.63<br>CJ-2020-1518: AC67 DISTRICT COURT REVOLVING FUND -$0.07<br>CJ-2020-1518: AC65 STATE JUDICIAL REVOLVING FUND, INTERPRETER SVCS -$0.02<br>CJ-2020-1518: AC64 DISPUTE MEDIATION FEES CIVIL ONLY -$0.18<br>CJ-2020-1518: AC59 COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND -$0.04<br>CJ-2020-1518: AC58 OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES -$0.13<br>CJ-2020-1518: AC31 COURT CLERK REVOLVING FUND -$0.05<br>CJ-2020-1518: AC23 LAW LIBRARY FEE CIVIL AND CRIMINAL -$0.15<br>CJ-2020-1518: AC01 CLERK FEES -$3.83 | | | |

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 06-02-2020 | ACCOUNT | RECEIPT # 2020-4098800 ON 06/02/2020. PAYOR: D SIMMONS TOTAL AMOUNT PAID: $ 234.00. LINE ITEMS: CJ-2020-1518: $151.03 ON AC01 CLERK FEES. CJ-2020-1518: $5.85 ON AC09 CARD ALLOCATIONS. CJ-2020-1518: $5.85 ON AC23 LAW LIBRARY FEE CIVIL AND CRIMINAL. CJ-2020-1518: $1.61 ON AC31 COURT CLERK REVOLVING FUND. CJ-2020-1518: $4.87 ON AC58 OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES. CJ-2020-1518: $1.51 ON AC59 COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND. CJ-2020-1518: $6.82 ON AC64 DISPUTE MEDIATION FEES CIVIL ONLY. CJ-2020-1518: $0.43 ON AC65 STATE JUDICIAL REVOLVING FUND, INTERPRETER SVCS. CJ-2020-1518: $2.41 ON AC67 DISTRICT COURT REVOLVING FUND. CJ-2020-1518: $24.37 ON AC79 OCIS REVOLVING FUND. CJ-2020-1518: $9.75 ON AC81 LENGTHY TRIAL FUND. CJ-2020-1518: $9.75 ON AC88 SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY. CJ-2020-1518: $9.75 ON AC89 COURT CLERK'S RECORDS MANAGEMENT AND PRESERVATION FEE. | | | |
| 06-04-2020 | SMF | SUMMONS FEE-7 | | | $ 70.00 |
| 06-04-2020 | SMIMA | SUMMONS ISSUED - MAILED BY ATTORNEY | | | |

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 06-04-2020 | ACCOUNT | RECEIPT # 2020-4100147 ON 06/04/2020.<br>PAYOR: SOLOMONSIMMONS LAW<br>TOTAL AMOUNT PAID: $ 70.00.<br>LINE ITEMS:<br>CJ-2020-1518: $70.00 ON AC01<br>CLERK FEES. | | | |
| 06-16-2020 | A | ANSWER<br>Document Available (#1046972960)<br>TIFF  PDF | | AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE INC | |
| 07-02-2020 | EAA | ENTRY OF APPEARANCE<br>Document Available (#1046979091)<br>TIFF  PDF | | ESTATE OF JOSHUA WAYNE HARVEY | |
| 07-28-2020 | S | PARTY HAS BEEN SUCCESSFULLY SERVED. CHARLES JORDAN / 7-20-20<br>Document Available (#1047340695)<br>TIFF  PDF | | JORDAN, CHARLES | |
| 07-28-2020 | S | PARTY HAS BEEN SUCCESSFULLY SERVED. / PATRICK DUNLAP / 7-20-20<br>Document Available (#1047340691)<br>TIFF  PDF | | DUNLAP, PATRICK | |
| 07-28-2020 | S | PARTY HAS BEEN SUCCESSFULLY SERVED. NIGEL HARRIS / 7-20-20<br>Document Available (#1047340679)<br>TIFF  PDF | | HARRIS, NIGEL | |
| 07-28-2020 | S | PARTY HAS BEEN SUCCESSFULLY SERVED. STEVEN DOUGLAS / 7-20-20<br>Document Available (#1047340683)<br>TIFF  PDF | | DOUGLAS, STEVEN | |
| 07-28-2020 | S | PARTY HAS BEEN SUCCESSFULLY SERVED. JAYE TAYLOR / 7-20-20<br>Document Available (#1047340687)<br>TIFF  PDF | | TAYLOR, JAYE | |

## IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
## STATE OF OKLAHOMA

ROMA PRESLEY, AS SPECIAL                )
ADMINISTRATOR OF THE ESTATE OF          )
JOSHUA WAYNE HARVEY,                    )
                                        )
       Plaintiff,                       )
                                        )
v.                                      )
                                        )
                                        )   CASE NO. CJ-2020-1518
                                        )   THE HONORABLE DOUG DRUMMOND
CITY OF TULSA, a municipal corporation; )
NIGEL HARRIS, individually;             )
                                        )
STEVEN DOUGLAS, individually;           )
JAYE TAYLOR, individually;              )
PATRICK DUNLAP, individually;           )
CHARLES JORDAN, individually;           )
AMERICAN MEDICAL RESPONSE               )
AMBULANCE SERVICE, INC., a foreign      )
corporation;                            )
                                        )
       Defendants.                      )

### ORIGINAL SUMMONS

SERVE BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED
The City of Tulsa, Oklahoma
(a municipal corporation)
c/o Tulsa City Clerk
175 East 2nd Street, Suite 260
Tulsa, Oklahoma 74103

TO THE ABOVE-NAMED DEFENDANT:

You have been sued by the above-named Plaintiff, and you are directed to file a written answer to the attached petition in the court of the above address within **twenty (20)** days after service of this summons upon you, exclusive of the day of service. Within the same time, a copy of your answer must be delivered or mailed to the attorney for the Plaintiff. Unless you answer the petition within the time stated, judgment will be rendered against you with costs of the action.

Issued this ____ day of June, 2020.

DON NEWBERRY, COURT CLERK

By: _____

DEPUTY COURT CLERK

(SEAL)

This summons was served on the _____ day of _____, 2020.

_____
(Signature of person serving summons)

**YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER. SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS**



DISTRICT COURT
**F I L E D**

MAY - 5 2020

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

## IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
## STATE OF OKLAHOMA

(1)   ROMA PRESLEY, AS SPECIAL
      ADMINISTRATOR OF THE ESTATE OF
      JOSHUA WAYNE HARVEY,

        Plaintiff,

        v.

(2)   CITY OF TULSA, a municipal
      corporation;
(3)   NIGEL HARRIS, individually;
(4)   STEVEN DOUGLAS, individually;
(5)   JAYE TAYLOR, individually;
(6)   PATRICK DUNLAP, individually;
(7)   CHARLES JORDAN, individually
(8)   AMERICAN MEDICAL RESPONSE
      AMBULANCE SERVICE, INC., a foreign
      corporation;

        Defendants.

**CJ-2020-01518**

Case No.:

ATTORNEY LIEN CLAIMED
JURY TRIAL DEMANDED



DOUG DRUMMOND

---

### PETITION

---

Roma Presley, as Special Administrator for the Estate of Joshua Harvey, for her Petition

against the above-named persons, would state and allege as follows:

**I.**

#### INTRODUCTION

This action arises under 42 U.S.C. § 1983 for the deprivation of Joshua's constitutional

rights by Tulsa Police Department Officers Nigel Harris ("Harris"), Steven Douglas ("Douglas"),

Jaye Taylor ("Taylor"), and Patrick Dunlap ("Dunlap"). Defendants Harris and Douglas deprived

Joshua of his right to be free from excessive force under the Fourth Amendment, from the repeated

and excessive use of a Conducted Electrical Weapon (CEW) no less than twenty-seven times in

violation of warnings that use in this manner could result in death. Defendants Taylor and Dunlap, who both observed Harris and Douglas' use of excessive force and possessed realistic opportunities to stop such violative conduct, failed to intervene in Harris and Douglas' violation of Joshua's constitutional right to be free from excessive force.

Additionally, all defendant officers actively participated or failed to intervene in a subsequent use of excessive force in which Joshua was unreasonably restrained and held in a face-down position that will predictably result in death under these circumstances. Further, all defendant officers denied Joshua his right to necessary medical care in violation of the Fourteenth Amendment by acting with deliberate indifference to Joshua's known and obvious medical needs as an arrestee at risk of sudden death.

This action also includes municipal liability claims against the City of Tulsa arising under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-213. Harris, Douglas, Taylor, and Dunlap acted pursuant to widespread custom, policy, and practice of the City, which encourages, condones, tolerates, or ratifies the use of excessive force by its officers through inadequate discipline for obvious violations. The City and former Chief Charles W. Jordan ("former Chief Jordan"), through long-standing customs, practices, and policies, in addition to the failure to adequately train officers on CEW use and airway management in compromised arrestees, acted with deliberate indifference to the constitutional rights of Joshua. These acts and omissions were the moving force behind Joshua's death.

Further, Estate's action includes state-law claims for negligence against Defendant American Medical Response Ambulance Service, Inc. ("AMR") based upon its own negligent hiring, supervision, and/or training and under the common law doctrine of *respondeat superior* due to the negligent acts of its employees acting within the scope of their employment.

2

Finally, Estate asserts claims for wrongful death and survival against all Defendants as permitted by law.

## II.

### PARTIES, JURISDICTION, & VENUE

1.     Roma Presley is the court appointed Special Administrator for the Estate of Joshua Harvey. Ms. Presley is a resident and citizen of Muskogee County, Oklahoma, and is the proper party to bring this action to obtain relief for claims for negligence and civil rights violations against her son pursuant to 42 U.S.C. § 1983.

2.     Defendant City of Tulsa ("City") is a municipal corporation situated mostly within Tulsa County, Oklahoma. At all times relevant hereto, the City employed Defendants Harris, Douglas, Taylor, and Dunlap as police officers with the Tulsa Police Department.

3.     Upon information and belief, Defendants Harris, Douglas, Taylor, and Dunlap are residents of Tulsa County, Oklahoma. At all relevant times, the officers acted under color of and authority of state law and within the scope of their employment as TPD officers.

4.     Upon information and belief, Defendant Charles Jordan is a resident of Tulsa County, Oklahoma. At all relevant times, he was acting under color of and authority of state law and within the scope of his employment, and within his individual capacity as the former TPD Chief of Police. As TPD Chief of Police, he was responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the TPD, including the policies, practices, procedures, and/or customs that violated Joshua Harvey's constitutional rights as set forth in this Petition.

5.     Defendant American Medical Response Ambulance Service, Inc. ("AMR") is a private ambulance corporation contracted by Emergency Medical Services Authority ("EMSA"),

3

a public trust, to provide ambulance services to the EMSA service area, which includes service within Tulsa County, Oklahoma.

6.      Jurisdiction and venue of this action lies in Tulsa County because the actions complained of herein occurred within Tulsa County and all of the Defendants either reside and/or conduct business within Tulsa County, Oklahoma.

7.      Estate served City with a notice of tort claim on August 1, 2019. More than 90 days have passed without receiving notice of any action taken by the City. Estate has timely exhausted all prerequisites to filing suit under the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151, *et seq*.

## III.

### STATEMENT OF FACTS

8.      On August 24, 2018, at approximately 7:30 a.m., Officers Harris, Douglas, Taylor, and Dunlap (often referred to herein as "the officers") responded to a "check subject" call reporting a man acting erratically, wandering in the road, and taking his clothes off.

9.      Per his own words in a TPD "use of force" report, Douglas responded to the call because he "believed that the subject might be under the influence of PCP, K2, bath salts or other mind altering drugs."[1]

10.     Upon arriving to the area, the officers encountered and approached Joshua Harvey, a 25-year-old young man and loving father of a 4-year-old son.

11.     Joshua suffered from Bipolar Disorder and Schizophrenia. These conditions contributed to Joshua's self-medicating behaviors that included use of methamphetamine.

---

[1] Tulsa Police Department, *Use of Force Report*, p. 1 (entered Aug. 29, 2018) (involving the incident with Joshua).

4

12.     The information provided to TPD regarding Joshua's behavior was sufficient to indicate that the "check subject" call referred to a situation involving a person with an actual or perceived mental health condition.

13.     Per a report by the Treatment Advocacy Center, because severe mental illness is a factor "in at least 25% and as many as 50% of all fatal law enforcement encounters," reducing these encounters "may represent the single most immediate, practical strategy for reducing" fatal police encounters.[2] Estate contends that a reasonably trained officer would be aware of similar information at the time of the incident sufficient to influence police-citizen encounters.

14.     TPD officers may request the assistance of a designated Crisis Intervention Team (CIT) officer in responding to situations involving persons with an actual or perceived mental health condition.[3]

15.     Upon information and belief, TPD employs approximately 170 CIT officers.

16.     Further, TPD officers may utilize mobile mental health services,[4] including a crisis team of medical and social work professionals referred to as "Community Outreach Psychiatric Emergency Services" (COPES), a service designed to respond to individuals in psychiatric crisis at any time of the day.

17.     Despite information that the "check subject" call involved a person with an actual or perceived mental health condition, at least one officer, Douglas, presumed that the subject's

---

[2] TREATMENT ADVOCACY CENTER, *Overlooked in the Undercounted: The Role of Mental Illness in Fatal Law Enforcement Encounters* 1, 3 (Dec. 2015), http://www.treatmentadvocacycenter.org/ storage/documents/overlooked-in-the-undercounted.pdf.

[3] City of Tulsa, *Tulsa Police Dep't: Emotionally Disturbed/Non-Criminal*, Procedure File No. 31-116A, Procedure No. 10 (effective Nov. 7, 2016).

[4] City of Tulsa, *Tulsa Police Dep't: Emotionally Disturbed/Non-Criminal*, Procedure File No. 31-116A, Procedure No. 11 (effective Nov. 7, 2016).

5

behavior was due to mind altering drugs, and none of the officers requested the assistance of a CIT officer and/or civilian mental health workers.

18.     The time spent observing and conversing with Joshua caused the officers to subjectively understand and appreciate that Joshua was agitated, having a mental health breakdown, and/or intoxicated.

19.     When Joshua disengaged and ran, Harris briefly gave chase until Douglas instructed him to hold back and let Joshua "wear his ass out."[5]

20.     Immediately thereafter, Dunlap asked Douglas if they were "gonna be zapping" Joshua,[6] to which Douglas noted, "we'll try."[7]

21.     Since 2005,[8] TASER's own products include explicit warnings advising law enforcement personnel of the increased risk of sudden death when used on agitated and/or intoxicated individuals.[9]

22.     Given that the situation presented clear circumstances for reasonable officers to know Joshua was agitated and/or intoxicated, the officers knew or should have known that use of the CEW on Joshua could result in death if the officers used the CEW improperly and contrary to guidelines.

23.     The officers returned to the patrol cars and drove around looking for Joshua.

---

[5] PoliceActivity, *RAW Bodycam Footage of Man Repeatedly Tased by Tulsa Cops*, at 01:04, YOUTUBE (Sept. 3, 2018), https://www.youtube.com/watch?v=rPcuiaUTgWk.

[6] *Id.* at 01:06.

[7] *Id.* at 01:12.

[8] Grant Smith *et al.*, *Special Report: Why 'higher risk' human targets get shocked with Tasers*, REUTERS (Feb. 7, 2018, 06:22 AM), https://www.reuters.com/article/us-usa-taser-vulnerable-specialreport/special-report-why-higher-risk-human-targets-get-shocked-with-tasers-idUSKBN1FR1PZ.

[9] *See* Axion Enterprise, Inc., *TASER Handheld CEW Warning, Instruction, and Information: Law Enforcement* at 2, available at www.axon.com/legal under Product Warnings.

24.     Shortly thereafter, the officers located and cornered Joshua, who acted consistent with a schizophrenic being chased by police. Joshua was terrified and searching for help.

25.     Joshua sought refuge by attempting to enter a nearby door, but his efforts resulted in the safety glass shattering over his head.

26.     As Joshua entered the building, Douglas and Harris violated mandatory TPD procedure by simultaneously using two CEWs in dart mode on Joshua.[10]

27.     Joshua immediately fell to the ground consistent with the incapacitating CEW mode used by Douglas and Harris.

28.     Additional TPD procedure on CEW use provides: "Unless exigent circumstances exist, backing officers should use each 5-second CEW cycle as a "window of opportunity" to establish control/cuff the suspect while they are affected or immediately after the CEW cycle has ended. The need for multiple 5-second cycles or extended/prolonged CEW exposures may be avoided or reduced by "controlling/cuffing during the "window of opportunity" that the 5-second CEW cycle provides."[11]

29.     Officers Douglas and Harris were joined by Officers Taylor and Dunlap, but, rather than secure Joshua after the fall, Taylor and Dunlap stood back and watched while Joshua was effectively subdued.

30.     When Joshua attempted to get up, both Douglas and Harris triggered their CEWs again, which had the intended effect of incapacitating him.

---

[10] City of Tulsa, *Tulsa Police Dep't: Use of Conducted Electrical Weapons*, Procedure File No. 31-101E, Procedure No. 5 (effective May 9, 2014) (stating "[o]fficers shall not simultaneously deploy CEWs on one individual").

[11] City of Tulsa, *Tulsa Police Dep't: Use of Conducted Electrical Weapons*, Procedure File No. 31-101E, Procedure No. 2 (effective May 9, 2014).

7

31.     Still, Officers Taylor and Dunlap made no effort to secure Joshua, as demonstrated by video evidence.

32.     This process was repeated more than two dozen times. The officers' own reports indicate that one officer cycled his taser sixteen times for a total of 35 seconds of electronic "arc;" the other cycled his eleven times for 29 seconds.[12]

33.     According to the use of force report, Joshua was subjected to a TASER in dart mode no fewer than 27 times in less than 3 minutes.[13]

34.     While the officers' report indicated that the CEWs were only partially effective,[14] video from the incident clearly demonstrates Joshua's repeated incapacitation with each cycle administered by Harris and Douglas. Upon information and belief, reports with obvious disparities from an encounter resulting in death are caused by municipal practices that either tolerate false reporting or acquiesce in its use.

35.     Harris and Douglas' extended use of the CEWs in dart mode exhibited attempts to go beyond mere "pain compliance" and impose more lethal incapacitating CEW applications.

36.     TASER's CEW products forbid users from using TASERs in dart mode as a means of pain compliance due to the increased risks of sudden death.[15]

37.     After having been subjected to over a full minute of CEW dart mode cycles by Harris and Douglas, Joshua was finally handcuffed, face down, at his wrists and ankles.

---

[12] *See supra*, n. 1, at 2.

[13] *Id.* at 1.

[14] *Id.*

[15] *See supra*, n. 9, at 6.

8

38.     After Joshua was cuffed, officers held him down for approximately fifteen minutes, and failed to turn him on his side in conformity with warnings from a 1995 bulletin by a National Institute of Justice program within the United States Department of Justice.[16]

39.     This bulletin explicitly warned law enforcement of the risks of sudden death of arrestees held in this position in association with other factors such as agitation and/or intoxication, and over-exertion.

40.     Restrained face down in violation of clearly established warnings, Joshua begged for help and struggled to breathe.

41.     His restraint position, over-exertion, unjustifiably extensive exposure to Harris and Douglas' CEWs, and agitation and/or intoxication all contributed to his struggles to breathe.

42.     Any struggle or resistance to officers that Joshua exhibited during the time he was restrained was consistent with the body's natural reaction to oxygen deficiency,[17] especially when considering that prolonged and excessive exposure to CEW cycles dramatically increases lactic acid levels in the blood and results in metabolic acidosis.[18]

43.     With indifference to Joshua's request for help, one officer told Joshua, "No. You've been naughty this morning, and we're not happy with you. We're really disappointed in your behavior today,"[19] and did nothing to alleviate the risk Joshua communicated.

---

[16] National Law Enforcement Technology Center, *Positional Asphyxia—Sudden Death*, US DEPARTMENT OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, NATIONAL INSTITUTE OF JUSTICE (June 1995), https://www.ncjrs.gov/pdffiles/posa sph.pdf.

[17] *Id.* at 2.

[18] Eun-Jung Park, et al., *Repetitive TASER X26 Discharge Resulted in Adverse Physiologic Events with a Dose-Response Relationship Related to the Duration of Discharge in Anesthetized Swine Model*, J. OF FORENSIC SCI. (2012), https://www.charlydmiller.com/LIB15/2012JofForensicSciRepetitiveTaser15Oct.pdf.

[19] *See supra*, n. 5, at 10:27.

9

44.     The video captured officer Dunlap asking Joshua his name and Douglas callously replying, "Crazy ass is what his name is."[20]

45.     Still, no help was provided, and video shows officers violating TPD policy[21] by failing to turn Joshua on his side to allow for proper airway management, despite actual or constructive knowledge that Joshua was a high risk for death or seriously bodily injury based on:

   a.  their subjective awareness of Joshua's impairment obtained during the initial encounter;

   b.  the extended cycle of exertion and exhaustion caused by the repeated triggering of two CEWs in dart mode; and

   c.  the City policy prohibiting simultaneous use of CEWs and explicit manufacturer warnings that communicated the dangerousness of the conduct.

46.     Despite this knowledge, officers kept Joshua face down in a restrained position for nearly fifteen minutes and continued to apply pressure to his back further restricting his air flow.

47.     During the time Joshua was restrained, EMTs employed by Defendant AMR arrived at the scene, but unnecessarily parked a half block away from the bank.[22]

48.     A single EMT asks the officers, "Is he out of it, pretty much?" Douglas responds "no," although another officer can be heard in the video responding "yes." At this point in the video, Joshua can only be heard making quiet, exasperated groans.[23]

---

[20] *Id.* at 07:11.

[21] *See* City of Tulsa, *Tulsa Police Dep't: Use of Conducted Electrical Weapons*, Procedure File No. 31-101E, Regulation No. 13 (effective May 9, 2014) (stating that "[o]fficers shall not use any restraint technique that impairs respiration.").

[22] *EMSA Patient Care Report re: Joshua Harvey*, p. 1 (Aug. 24, 2018).

[23] *See supra*, n. 5, at 17:21–17:26.

49.     The EMT asked a nearly unconscious Joshua for his name. Joshua could only "respond" with the same quiet, exasperated groans.

50.     Further, the officers violated TPD regulations in failing to request that EMSA evaluate Joshua.[24]

51.     Upon the direction of the officers, the EMT stated that he would retrieve NARCAN nasal spray to administer to Joshua and left the lobby of the building.

52.     The EMT failed to make a crucial assessment of Joshua's medical condition before returning to the ambulance parked half a block away.

53.     As Joshua's breathing continued to deteriorate and his oxygen levels decreased, Douglas commented that Joshua was "[j]ust enjoying that high."[25] Despite merely showing slight head movements by this point and no visible signs of resistance, the officers continued to hold down Joshua and apply pressure to his back.

54.     Thereafter, Douglas and Dunlap acknowledged and discussed[26] Joshua's clear exhibition of symptoms related to a condition TPD calls "excited delirium."[27]

55.     Per TPD policy, "Officers deploying a CEW should be aware of excited delirium and contributing factors that lead to excited delirium deaths."[28]

---

[24] City of Tulsa, *Tulsa Police Dep't: Use of Conducted Electrical Weapons*, Procedure File No. 31-101E, Regulation No. 6 (effective May 9, 2014) ("Officers **shall** request that EMSA personnel evaluate . . . the subject").

[25] *See supra*, n. 5 at 18:26.

[26] *Id.* at 19:40–19:52.

[27] *See* City of Tulsa, *Tulsa Police Dep't: Use of Conducted Electrical Weapons*, Procedure File No. 31-101E, Definitions (effective May 9, 2014) (defining "excited delirium" as "a state of extreme mental and physiological excitement characterized by ***extreme agitation***, hyperthermia, epiphoria, hostility, ***exceptional strength and endurance without apparent fatigue***.") (italics and boldface added).

[28] City of Tulsa, *Tulsa Police Dep't: Use of Conducted Electrical Weapons*, Procedure File No. 31-101E, Policy (effective May 9, 2014).

56. Further, TPD regulations state that "[s]ubjects displaying symptoms of excited delirium will be transported by EMSA to a hospital for observation and blood work. All persons who have been subjected to an CEW application should be monitored regularly while in police custody, even if they received medical care."[29]

57. Despite Douglas and Dunlap's references to excited delirium symptoms in describing their encounter with Joshua, all officers continued to deny Joshua needed medical attention in turning him on his side, and, instead, continued to use excessive force by holding him in a dangerous restraint position while applying pressure to Joshua's back.

58. After nearly fifteen minutes of exposing Joshua to a restraint position that was clearly unreasonable given the totality of the circumstances, an officer observed that Joshua had lost consciousness.

      a. Joshua loss of consciousness was the result of suffering cardiac arrest due to the officers' unreasonable use of simultaneous deployment of CEWs in dart mode, the prolonged multiple CEW cycles, and the deliberately indifferent restraint position in which officers held Joshua.

59. Thereafter, Douglas runs to and opens the building door and alerts Defendant AMR's employees, who were slowly walking up to the building with a gurney, that Joshua was unconscious.

60. The lack of urgency exhibited by the EMTs was unreasonable under the circumstances. In particular, the amount of time it took for the lone EMT to go back to the

---

[29] City of Tulsa, *Tulsa Police Dep't: Use of Conducted Electrical Weapons*, Procedure File No. 31-101E, Regulation No. 7 (effective May 9, 2014).

12

ambulance and return to the building with a gurney and additional EMTs—approximately three and a half minutes—was abhorrent given that the total distance amounted to a mere block.

61.     By the time the EMTs finally entered the building, the video depicts them proceeding in an unreasonably lackadaisical manner.

62.     Had the EMT reasonably assessed Joshua at the scene upon initial contact, the EMTs would have taken immediate measures to address Joshua's oxygen deficiency.

63.     Instead, Joshua never regained consciousness and was pronounced dead three days later.

64.     Though at least some of the officers involved went to the hospital, they left shortly thereafter and made no attempts to contact Joshua's family.

65.     In fact, the Tulsa Police Department did not notify Joshua's family of the incident for over two days, providing the family a mere eight hours to be with Joshua before he died.

66.     Upon information and belief, both Harris and Douglas were exposed to TASER training material that provided explicit warnings about the dangerousness of using multiple CEWs or triggering an excessive number of cycles, and knew that triggering an excessive number of cycles could predictably cause death.

67.     Upon information and belief, both Harris and Douglas were exposed to the TPD procedure prohibiting the simultaneous use of CEWs and knew that simultaneous use was prohibited and could predictably cause death.

68.     Upon information and belief, Taylor and Dunlap were exposed to TASER training material and the TPD procedure that provided explicit warnings for backing officers to secure suspects subject to CEWs use as soon as reasonably possible, and knew that such failure could predictably cause death.

13

69.     Upon information and belief, City expects its police officers to use CEWs against people who may require airway management following a CEW exposure but prior to the arrival of first responders.

70.     Upon information and belief, all the officers were exposed to the TPD regulation mandating that officers not restrain an arrestee in a position that would restrict breathing.

71.     Upon information and belief, and despite City's expectation, City does not train its police officers in airway management for persons exposed to multiple CEW cycles.

72.     Given the City's expectation of its officers, and the frequency with which officers will encounter scenarios involving post-CEW exposure, the likelihood that a person will suffer an adverse medical event is highly predictable or a plainly obvious consequence of failing to provide airway management training.

73.     Upon information and belief, none of the officers involved in the incident were disciplined for their violations of internal policies and procedures, despite policy violations constituting statutory excessive force under Oklahoma law. *See* 22 O.S. § 34.1(b).

74.     The following brief summaries taken from pleadings in cases filed against the City and TPD officers provide only representative examples of the frequent use of excessive force by TPD officers and the lack of adequate policies, training, supervision, and discipline on the part of the City to prevent this dangerous and unconstitutional conduct:

> a. **April 12, 2008**: An *unarmed and diminutive minor*, TME, was walking past two TPD officers when without provocation or justification the officer slammed him onto concrete and beat his face. As a result of the beating, TME suffered a blowout fracture of his eye, requiring corrective surgery; he also sustained permanent hearing and vision impairment. TME was not prosecuted for any crime relating to the beating. TME's mother filed suit on his behalf and settled his claims against the City of Tulsa and the TPD officers. *See, Evans v. City of Tulsa*, No. 08-CV-00547-JHP-FHM (N.D. Okla. June 18, 2010).

14

b.  **July 27, 2010**: Richard Smith ("Smith") was late checking out of his motel room.
TPD officers found an unarmed Smith intoxicated and lying naked on the hotel bed
virtually unresponsive. A TPD officer shot several rounds of pepper balls onto
Smith's face, head, and naked body. Smith was transported to a hospital for signs
of respiratory failure and severe bruising due to the repeated pepper ball shots.
Smith was not prosecuted for any crime relating to his motel stay and settled his
claims against the City of Tulsa and the TPD officers. *See, Smith v. City of Tulsa*,
No. 11-CV-00113- JHP-PJC (N.D. Okla. Aug. 16, 2012).

c.  **February 16, 2012**: While lawfully parked outside of the BOK Center waiting for
customers to return to his taxi, an unarmed Hussam Chammat ("Chammat") was
unlawfully seized and dragged from his taxi by a TPD officer. The TPD officer
unnecessarily handcuffed, beat, and pepper sprayed Chammat. Chammat was not
prosecuted for any crime relating to the beating. Chammat settled his claims against
the City of Tulsa and TPD officers. *See, Harris v. Toliver*, No. 12-CV-00162-JED-
FHM (N.D. Okla. Mar. 25, 2013).

d.  **November 4, 2012**: During a traffic stop, a TPD Officer beat an unarmed Christina
Winn ("Winn") and deployed his taser six times in less than two minutes. The TPD
officer's sworn testimony and written reports contradicted each other, and both
contradicted the taser deployment log. Winn suffered permanent injuries and
disfigurement and filed a lawsuit. Winn settled her claims against the City of Tulsa
and TPD officers. *See, Winn v. City of Tulsa*, No. CJ-2013-5262 (Tulsa Cnty. Dist.
Ct. filed Nov. 15, 2013), removal; No. 14-CV-00497-CVE-FHM (N.D. Okla. Aug.
22, 2014).

e.  **June 1, 2013**: Jay Wayne Bates ("Bates") was having a seizure, and Bates' mother
called EMSA for assistance. TPD arrived and although Bates was on his own
property and having convulsions, a TPD officer repeatedly kicked and struck an
unarmed Bates with a baton while he was on the ground. Bates suffered a broken
hand and a broken rib. Bates settled his claims against the City of Tulsa and TPD
officers. *See, Bates v. City of Tulsa*, No. 14-CV-00280-GKF-FHM (N.D. Okla.
Sept. 3, 2015).

75.     Ollie Brooks' case, highlighted in the 2019 Human Rights Watch report on Tulsa

Police Department misconduct,[30] is particularly notable for *Monell*-claim purposes due to the

overwhelming similarities shared with Joshua's case.

---

[30] *See generally*, Human Rights Watch, *"Get on the Ground!": Policing, Poverty, and Racial Inequality in Tulsa,
Oklahoma. A Case Study of US Law Enforcement* (September 2019), https://www.hrw.org/report/2019/09/12/get-
ground-policing-poverty-and-racial-inequality-tulsa-oklahoma/case-study-us-law.

76.     Ollie Brooks was an older homeless man who worked odd jobs. He had served time in prison stemming from a 2002 misdemeanor charge for drug paraphernalia but had no subsequent convictions thereafter. In 2015, however, he received a ticket – for jaywalking. One evening police came to a motel, where Brooks happened to be staying, and conducted a warrant sweep. Officers looked at the motel register and ran all the names for warrants. They found that Ollie Brooks had a warrant, and even though it was just for jaywalking, they chose to arrest him. TPD officers knocked on Ollie's door to arrest him. Officers pepper sprayed him and twice shocked him with a CEW. He collapsed at the scene and died a short time later. All over a jaywalking warrant. Just like in the instant case, TPD did not discipline the officers that killed Ollie and waiting days before informing his family and the public that they killed Ollie.

77.     Further, the Human Rights Watch report itself details extensive findings relevant to custom, policy, and practice of the City, which encourages, condones, tolerates, and ratifies the use of excessive force by law enforcement officers in the City, including, but not limited to, the following excerpt:

78.     "According to data provided by the department, of the 1700 incidents and 3,364 distinct 'non-deadly' force actions reported by police from 2012 through 2017, the Tulsa Police Department found only two forceful acts that were not 'within policy.' They imposed no discipline in either case. Internal Affairs reports for those years indicated that all but five forceful acts were 'within policy,' and only one resulted in discipline."[31]

79.     HRW provided the following conclusion regarding its study: "This report documents numerous instances where Tulsa police officers appear to have used force in an arbitrary, abusive or disproportionate manner. The evidence suggests that such incidents occur

---

[31] *Id.* at 7.

frequently. Yet, as discussed above, authorities purport to have detected only two uses of non-lethal force in recent years that deviated from established protocols—imposing no discipline in either instance. Human Rights Watch's analysis is that Tulsa authorities have failed to take effective steps to prevent officers from using force in an abusive manner, while also failing to adequately investigate and hold officers accountable for abuses."[32]

## IV.

### STATEMENT OF CLAIMS

### COUNT 1
### 42 U.S.C. § 1983 – FOURTH AMENDMENT VIOLATION – EXCESSIVE FORCE
### (AS TO ALL LAW ENFORCEMENT DEFENDANTS)[33]

80.     Estate hereby incorporates all other paragraphs of this Petition as if fully set forth herein.

81.     All individual TPD officers to this claim, at all relevant times hereto, were acting under the color of state law in their capacities as law enforcement officers for the City of Tulsa.

82.     The City and its officials, employees, agents, and representatives were, at all relevant times, acting under the color of ordinances, policies, regulations, customs, and state law.

83.     At the time of the incident described above, Joshua had a clearly established constitutional right to be secure in his person from unreasonable seizure through excessive force.

84.     Any reasonable law enforcement officer would have known of this clearly established right at the time of the incident.

85.     Further, per manufacturer warnings, bulletins by the National Law Enforcement Technology Center, and/or TPD's own policies, any reasonable officer:

---

[32] *Id.* at 207.

[33] "Law Enforcement Defendants" includes the City of Tulsa, Chief Jordan, Officer Douglas, Officer Harris, Officer Taylor, and Officer Dunlap.

17

a. would have known of the increased risk of sudden death when using a CEW on persons suffering from impairment, agitation, and/or over-exertion.

b. would not have engaged in simultaneous deployment of multiple CEWs in dart mode and use of multiple completed cycles at the same time against a person.

c. would have controlled and restrained a person effectively subdued during or immediately after completion of a CEW cycle, whereupon the person experiences neuromuscular incapacitation, in order to minimize the risks associated with cumulative CEW effects.

d. would not have engaged in prolonged cycling of CEWs against a person as a means of achieving "pain compliance."

e. would have, upon securing the person, turned the person on his side to allow for ease of breathing, and would not have held the person down while he was lying face down on his stomach in order to avoid sudden death following taser use.

86.     All individual TPD officers engaged in the use of force that was objectively unreasonable in light of the facts and circumstances confronting them, violating Joshua's Fourth Amendment rights.

a. All individual TPD officers possessed sufficient information to understand and appreciate that Joshua suffered from impairment, agitation, and over-exertion/exhaustion by the time they entered the bank in pursuit of Joshua and during the time in which he was effectively subdued.

b. Defendants Harris and Douglas used excessive force via simultaneous deployment of two CEWs in dart mode against Joshua and by continuing to cycle their CEWs in dart mode in order to achieve "pain compliance" by improper means.

18

c. Neither Taylor nor Dunlap took reasonable steps to protect Joshua from the objectively unreasonable use of force by Harris and Douglas, despite having ample opportunity to do so, and instead stood back and, further, made no attempt to secure Joshua after he clearly experienced neuromuscular incapacitation.

d. After Joshua was subjected to excessive force by simultaneous CEW use lasting over a minute, Defendants Harris, Douglas, Taylor, and Dunlap unnecessarily and unreasonably applied pressure to Joshua's back as he lay face down on his stomach, effectively subdued, in a manner known to contribute to sudden death following CEW use that conforms to manufacturer guidelines and TPD policy.

87.    Defendants Harris, Douglas, Taylor, and Dunlap unreasonably used excessive force against Joshua, resulting in his death.

88.    The acts or omissions of the individual TPD officers were the moving force behind and the proximate cause of Joshua's death.

89.    The acts and omissions of individual TPD officers were engaged in pursuant to the custom and practice of the City, which encourages, condones, tolerates, and ratifies the use of excessive force by law enforcement officers in the City through a lack of discipline and inadequate training.

90.    As a direct and proximate cause of the acts and omissions detailed above, all Law Enforcement Defendants are liable for the pain, injury, loss of consortium, and death that Joshua suffered. Redress is authorized by 42 U.S.C. § 1983.

91.    Defendants are not entitled to qualified immunity for the complained conduct.

### COUNT 2
### 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT VIOLATION – DEPRIVATION OF LIFE WITHOUT DUE PROCESS
### (AS TO ALL LAW ENFORCEMENT DEFENDANTS)

92.     Estate hereby incorporates all other paragraphs of this Petition as if fully set forth herein.

93.     All individual TPD officers to this claim, at all relevant times hereto, were acting under the color of state law in their capacities as law enforcement officers for the City of Tulsa.

94.     The City and its officials, employees, agents, and representatives were, at all relevant times, acting under the color of ordinances, policies, regulations, customs, and state law.

95.     Prior to the incident, the City developed and maintained policies, practices, customs, and a culture that was deliberately indifferent to the constitutional rights of residents of the City, and thereby caused the violation of Joshua's constitutional rights under the due process clause of the Fourteenth Amendment of the United States Constitution.

96.     Joshua's right to due process was violated when Defendants Harris, Douglas, Taylor, and Dunlap, with deliberate indifference to Joshua's rights, engaged in acts and omissions that caused his death, as described herein.

97.     The City violated Joshua's right to due process by being deliberately indifferent to its duty to provide proper training and supervision of Officers Harris, Douglas, Taylor, and Dunlap, in violation of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

98.     The City violated Joshua's right to due process by maintaining a practice, custom, and/or culture of using excessive force against City residents, including excessive force through the use of CEWs and unreasonable restraint positions that City knew would contribute to sudden death.

99.     The City was aware of TPD's use of excessive force, yet routinely ratified such illegal conduct by failing to discipline and/or reprimand TPD officers like those involved herein for their known misconduct and violations of internal policies, procedures, and regulations, thereby ensuring that employee-officers would continue to use excessive force in a manner that would predictably result in death.

100.    The City maintained a policy, practice, and custom of failing to properly train TPD officers as to CEW use and restraint positions that avoid contributing to sudden death.

101.    The acts and omissions of individual TPD officers were engaged in pursuant to the custom, policy, and practice of the City, which encourages, condones, tolerates, and ratifies violations of constitutional rights by law enforcement officers in the City.

102.    As a direct and proximate cause of the acts and omissions detailed above, the individual TPD officers violated Joshua's right to a familial relationship with his son, and all Law Enforcement Defendants are liable for the pain, injury, loss of consortium, and death that Joshua suffered. Redress is authorized by 42 U.S.C. § 1983.

103.    Defendants are not entitled to qualified immunity for the complained conduct.

### COUNT 3
### 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT VIOLATION –DELIBERATE INDIFFERENCE TO MEDICAL NEED
### (AS TO ALL LAW ENFORCEMENT DEFENDANTS)

104.    Estate hereby incorporates all other paragraphs of this Petition as if fully set forth herein.

105.    At all times relevant to the allegations herein, individual TPD officers acted or failed to act under color of state law.

106.    At all times relevant to the allegations herein, individual TPD officers were acting pursuant to municipal custom, policy, or practice in their actions pertaining to Joshua.

21

107.    Individual TPD officers knew or should have known of Joshua's condition, which required immediate intervention, resulting from:

a. Joshua's agitation and/or intoxication, of which the aforementioned Defendants knew or should have known based upon their initial encounter and interactions with Joshua;

b. Harris and Douglas' simultaneously deployment of their CEWs and administration of prolonged CEW cycles in dart mode lasting over a full minute, cumulatively;

c. the individual TPD officers' use of a restraint position known to promote sudden death in arrestees subjected to CEWs;

d. the individual TPD officers' application of pressure to Joshua's back while he was restrained;

e. Joshua's ever-deteriorating state throughout the entirety of the time in which he was restrained.

108.    Individual TPD officers had an obligation to provide adequate care to Joshua Harvey, and despite actual or constructive knowledge that Joshua Harvey was suffering from an objectively serious medical condition, and with indifference to the consequences, the individual TPD officers either did nothing to respond to the emergent medical condition confronting them, or their actions were such a departure from what constitutes an adequate response that their conduct exhibited indifference to the circumstances confronting them.

109.    The acts and omissions of individual TPD officers were engaged in pursuant to the custom, policy, and practice of the City, and the City's unconstitutional policies, customs, or practices were the legal and proximate cause of Joshua's injuries and death.

22

110.    The failure of individual TPD officers to provide adequate care to Joshua Harvey for several minutes either prolonged his suffering or caused his condition to worse, for which all Law Enforcement Defendants are liable.

### COUNT 4
### 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT VIOLATION – DELIBERATELY INDIFFERENT PRACTICES, CUSTOMS, TRAINING, SUPERVISION, AND RATIFICATION – *MONELL* CLAIM (AS TO THE CITY)

111.    Estate hereby incorporates all other paragraphs of this Petition as if fully set forth herein.

112.    Individuals deprived of their Fourteenth Amendments rights may seek redress under 42 U.S.C. § 1983. Section 1983 provides a cause of action against any "person" who deprives an individual of federally guaranteed rights "under color" of state law.

113.    The City and its officials, employees, agents, and representatives were, at all relevant times, acting under the color of ordinances, policies, regulations, customs, and state law.

114.    At all times relevant to the allegations herein, individual TPD officers were acting pursuant to municipal custom, practice, and culture in their actions pertaining to Joshua.

115.    Upon information and belief, underreporting excessive CEW exposure is widespread within the agency and tolerated by City and its authorized decisionmakers through a failure to discipline offender-officers and by failing to take reasonable steps to determine the accuracy of officer-reported CEW cycles.

116.    Upon information and belief, it is the practice and/or custom of TPD—pursuant to a culture which instills and/or fails to address the "warrior" mentality that promotes officers' use of tactics that needlessly create use of force situations—to decline the option of assistance from CIT and/or civilian mental health professionals.

23

117. The City violated Joshua's right to due process by being deliberately indifferent to its duty to provide proper training and supervision of Officers Harris, Douglas, Taylor, and Dunlap, in violation of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

118. The City violated Joshua's right to due process by maintaining a practice, custom, and culture of using excessive force against City residents, including excessive force through the use of CEWs and unreasonable restraint positions that contribute to sudden death.

119. The City's actions reveal that its written CEW policy is a policy in name only; City maintains and enforces an official practice of permitting multiple, excessive, and life-threatening CEW exposures and routinely ratified such illegal conduct by failing to discipline and/or reprimand TPD officers like those involved herein for their known misconduct and violations of internal policies, procedures, and regulations.

120. The City maintained a policy, practice, and custom of failing to properly train TPD officers as to CEW use and restraint positions that avoid contributing to sudden death.

121. The City and its policymakers know the officers in this case used deadly force in violation of agency policy, and upon information and belief, the City and its policymakers did not enforce the written CEW policy or impose any measure of discipline on the officers.

122. Upon information and belief, underreporting excessive CEW exposure is widespread within the agency and tolerated by City and its authorized decisionmakers through a failure to discipline offender-officers and by failing to take reasonable steps to determine the accuracy of officer-reported CEW cycles.

123. The existence of the "warrior" mentality that permeates within TPD, which encompasses a practice or custom of declining to utilize resources that would otherwise mitigate officers' needless tactics that promote the use of force, is a culture that has historically resulted in

24

constitutional violations that the City was aware of prior and up to Joshua's death. Further, constitutional violations are highly predictable and plainly obvious consequences of the culture of "warrior" police officers within TPD.

124.    As a direct and proximate cause of the acts and omissions detailed above, all individual TPD officers declined to utilize additional resources that are instrumental in reducing fatal police encounters involving persons with mental health conditions.

125.    As a direct and proximate cause of the acts and omissions detailed above, Harris and Douglas, in the presence of two other backing officers, simultaneously deployed their CEWs in dart mode against Joshua and cycled their CEWs 27 times, resulting in unreasonable and prolonged CEW exposure of over a full minute, with deliberate indifference to Joshua's known or perceived agitation from mental illness and/or intoxication.

126.    As a direct and proximate cause of the act and omissions detailed above, Taylor and Dunlap failed to intervene in the excessive use of CEWs by Harris and Douglas.

127.    As a direct and proximate cause of the acts and omissions detailed above, all of the officers engaged in excessive force in restraining Joshua face down and applying pressure to his back.

128.    As a direct and proximate cause of the acts and omissions detailed above, all of the officers failed to provide necessary medical aid to Joshua.

129.    As a direct and proximate cause of the acts and omissions detailed above, none of the officers were reprimanded or disciplined for their acts or omissions that both violated Joshua's constitutional rights and TPD internal policies, procedures, and regulations.

25

130.    The City violated Joshua's right to due process by being deliberately indifferent to its duty to provide proper training and supervision of Officers Harris, Douglas, Taylor, and Dunlap, in violation of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

131.    The City violated Joshua's right to due process by maintaining a practice, custom, and culture of using excessive force against City residents, including excessive force through the use of CEWs and unreasonable restraint positions that contribute to sudden death.

132.    The City, through its long-standing customs, practices, and policies, in addition to its failure to adequately train officers on CEW use and airway management in compromised arrestees, as well as its ratification of unconstitutional conduct, acted with deliberate indifference to the constitutional rights of its residents, and its acts and omissions were the moving force behind Joshua's death.

133.    As a direct and proximate cause of the acts and omissions detailed above, the City is liable for the pain, injury, loss of consortium, and death that Terence suffered. Redress is authorized by 42 U.S.C. § 1983.

### COUNT 6
### 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT VIOLATION – SUPERVISORY LIABILITY
### (AS TO DEFENDANT JORDAN)

134.    Estate hereby incorporates all other paragraphs of this Petition as if fully set forth herein.

135.    Individuals deprived of their Fourth and Fourteenth Amendment rights may seek redress under 42 U.S.C. § 1983. Section 1983 provides a cause of action against any "person" who deprives an individual of federally guaranteed rights "under color" of state law.

136.    At all relevant times, Chief Jordan acted under color of and authority of state law in his capacity as

137.    As a direct and proximate cause of the acts and omissions detailed above, former Chief Jordan is liable for the pain, injury, loss of consortium, and death that Joshua suffered. Redress is authorized by 42 U.S.C. § 1983.

138.    Former Chief Jordan personally involved himself in constitutional violations against Joshua by drafting, reviewing, approving, and/or participating in the creation of constitutionally deficient policies, procedures, training manuals, training curriculum, and/or customs and practices for TPD during his time as TPD chief, including use of force via CEWs proper restraint positions, and interacting with citizens suffering from diminished capacity.

139.    Former Chief Jordan exercised control and discretion over these officers' activities, and officers like them who committed prior instances of excessive force against similarly situated citizens.

140.    Former Chief Jordan failed to properly discipline TPD officers, such as Officers Harris, Douglas, Taylor, and Dunlap, who engaged in excessive force and failed to address the medical need of Joshua. In fact, former Chief Chuck Jordan knew of multiple violations of citizens' constitutional rights and acquiesced in their continuance.

141.    Fromer Chief Jordan promulgated, created, implemented, or utilized policies that caused the deprivation of Joshua's rights. Former Chief Jordan knew and/or should have been obvious that the maintenance of the aforementioned formal policies, practices and/or widespread customs, and the failure to train and properly supervise officers would result in the constitutional violations, such as what happened to Joshua.

142.    Former Chief Jordan also failed to promulgate, create, or maintain these rules or procedures, despite repeated cases of excessive force and questionable officer-involved shootings by officers at TPD.

27

143.    Former Chief Jordan knew, or should have known, that poorly trained, improperly supervised, and undisciplined officers, who are empowered with deadly weapons, present a known and obvious risk of abuse of power and lethal violence to the population of the City.

144.    As a direct and proximate cause of the acts and omissions detailed above, former Chief Jordan is liable for the pain, injury, loss of consortium, and death that Joshua suffered. Redress is authorized by 42 U.S.C. § 1983.

145.    Defendant Jordan is not entitled to qualified immunity for the complained conduct.

## COUNT 6
## 42 U.S.C. §§ 12101-213 – DELIBERATE INDIFFERENCE TO RIGHTS SECURED UNDER THE AMERICANS WITH DISABILITIES ACT (ADA) (AS TO THE CITY)

146.    Estate hereby incorporates all other paragraphs of this Petition as if fully set forth herein.

147.    Joshua's history of bipolar disorder and schizophrenia qualify as disabilities within the purview of the ADA.

148.    Joshua was otherwise qualified to participate in or receive the benefit of the City's services, programs, or activities.

149.    Joshua was denied the benefits of the City's services, programs, or activities by reason of his disabilities.

150.    Specifically, the individual officers failed to provide reasonable accommodations and/or modifications for Joshua's disabilities after he was subdued by the individual TPD officers, who failed to take his mental illness into account.

151.    Despite policies providing for reasonable accommodations/modifications for interacting with emotionally disturbed persons, the officers did not make those services available to Joshua.

28

152.   With information indicating Joshua suffered from an actual or perceived mental health condition, the officers, acting pursuant to the City's customs and practices, precipitated the need to utilize force against Joshua, and then failed to accommodate for his condition after he was subdued.

153.   The acts and omissions of City's officers were a direct and proximate cause of Joshua's pain, injuries, and ultimate death. By virtue of the officers' acting pursuant to the customs and practices of the City, the City's actions were the "moving force" behind Joshua's pain, injuries, and death. Accordingly, the City is liable for damages authorized under the ADA.

## COUNT 7
### COMMON LAW – NEGLIGENCE
### (AS TO THE CITY)

154.   Estate hereby incorporates all other paragraphs of this Petition as if fully set forth herein.

155.   City, through its officers, owed a duty of reasonable care in the police-citizen encounter with Joshua, including a custodial duty defined and controlled by the special relationship doctrine. City and its officers breached that duty by using an unreasonable amount of force, and by failing to take alleviate risks to a person in custody, which cased injuries and damages for which the City is liable.

## COUNT 8
### STATUTORY LIABILITY – EXCESSIVE FORCE
### (AS TO THE CITY)

156.   Estate hereby incorporates all other paragraphs of this Petition as if fully set forth herein.

157.    City adopted and maintained an official written policy explicitly prohibiting the actions of the individual law enforcement officers as more fully detailed above, and Oklahoma law defines "excessive force" as force used in violation of agency policy.

158.    Accordingly, the individual Law Enforcement Defendants used statutory excessive force against Joshua in violation of Oklahoma law for which the City is liable under the Oklahoma Governmental Tort Claims Act.

### COUNT 9
### COMMON LAW – NEGLIGENT TRAINING AND SUPERVISION
### (AS TO DEFENDANT AMR)

159.    Estate hereby incorporates all other paragraphs of this Petition as if fully set forth herein.

160.    Defendant AMR had a duty to exercise reasonable care in the hiring, training, and supervision of its employees in a manner that provided arrestees under their care with reasonable medical care and treatment.

161.    Defendant AMR breached its duty to exercise reasonable care in the training and supervision of its subordinate employees.

162.    Defendant AMR knew or should have known of the lack of supervision, experience, and training among its employees, and also had reason to know that its employees were likely to harm arrestees of TPD in need of medical care, including Joshua.

163.    In failing to exercise reasonable care in the training and supervision of its employees relative to their providing reasonable medical care and treatment, Defendant AMR was negligent.

164.    The negligence of Defendant AMR proximately caused Joshua significant physical and mental pain, suffering, and, ultimately, his death.

165.    Defendant's conduct has proximately caused Estate significant pain, suffering, grief, loss of comfort and society, and other damages arising from the suffering and ultimate death of Joshua.

## COUNT 10
### COMMON LAW – NEGLIGENCE—VICARIOUS LIABILITY
### (AS TO DEFENDANT AMR)

166.    Estate hereby incorporates all other paragraphs of this Petition as if fully set forth herein.

167.    Defendant AMR is vicariously liable for the acts and omissions of its employees and/or agents under the doctrine of *respondeat superior*.

168.    At all times relevant hereto, Defendant AMR employed the aforementioned EMTs.

169.    At all times relevant hereto, the EMTs acted within the scope of their employment and with the intent to benefit their employer, Defendant AMR.

170.    During the course of this medical treatment, the EMTs were negligent in their care and treatment of Joshua.

171.    The EMTs had a duty to provide reasonable medical care and treatment to arrestees subjected to CEW usage at the hands of police, including Joshua.

172.    The EMTs breached their duty of care when they failed to provide Joshua with reasonably obtainable and necessary emergency medical treatment as required by applicable standards of care, custom, and law.

173.    The EMTs failed to adequately assess and treat Joshua, even as Joshua's medical condition, which was capable of assessment under the circumstances, deteriorated while in police custody.

31

174.    The EMTs failed to adequately intervene and reasonably instruct the aforementioned individual TPD officers. Instead, the EMTs unreasonably abdicated their duties and responsibilities by following the medical direction of non-medical professionals.

175.    Further, the EMTs displayed an overall lack of medical urgency in assessing and treating Joshua during a clear medical emergency that was reasonably cognizable under the circumstances.

176.    In failing to adequately assess, diagnose, and treat Joshua, and otherwise medically intervene in Joshua's deliberately indifferent restraint position on his behalf, and for their overall lack of reasonable urgency under the circumstances, the EMTs were negligent.

177.    The negligence of the EMTs, and by extension Defendant AMR, proximately caused Joshua significant physical and mental pain, suffering, and, ultimately, his death.

178.    Defendant's conduct has proximately caused Estate significant pain, suffering, grief, loss of comfort and society, and other damages arising from the suffering and ultimate death of Joshua.

### COUNT 11
### WRONGFUL DEATH
### (AS TO ALL DEFENDANTS)

179.    Plaintiff's claims are actionable under the Oklahoma Wrongful Death Act, 12 O.S. § 1053. Such claims are distinguishable from Survival Actions in Oklahoma in accordance with *Boler v. Security Health Care, L.L.C.*, 336 P.3d 468 (Okla. 2014), 2014 OK 80.

180.    As a direct result of the wrongful and negligent acts of all aforementioned Defendants, the next of kin of the decedent is entitled to incurred burial expenses, loss of the pecuniary value of services expected to be performed by the decedent and other damages recoverable under the Act including, but not limited to solatium damages.

## COUNT 12
### SURVIVAL CLAIM
### (AS TO ALL DEFENDANTS)

181.    Pursuant to 12 O.S. § 1051, the decedent's right of survival arising from the wrongful and negligent conduct by all aforementioned Defendants is held by Roma Presley, the legal representative of the Estate of Joshua Harvey. Plaintiff, Roma Presley demands all damages recoverable under the Act including substantial damages for funeral and medical expenses and conscious pain and suffering, as well as any other damages recoverable under the Act.

### PRAYER FOR RELIEF

Plaintiff prays this Court will grant the following:

1.    Judgment in excess of seventy-five thousand dollars ($75,000.00) in favor of Plaintiff, for all actual damages suffered by Joshua and his heirs, including without limitation, those emanating from physical pain, mental anguish and emotional distress, pecuniary loss, and loss of consortium, loss of enjoyment of life, and economic damages

2.    Judgment in favor of Plaintiff as damages for violations of Joshua's constitutional rights.

3.    Punitive damages to the extent permitted by law.

4.    A declaration that the excessive force against Joshua, as described herein, was unconstitutional as a matter of law.

5.    An award of attorneys' fees and costs, including expert witness fees, pursuant to 42 U.S.C. § 1988(b), and any other applicable provisions of law.

6.    Any and all further relief this Court deems just and equitable, including pre- and post-judgment interest at the appropriate lawful rate.

Respectfully submitted,

Damario Solomon-Simmons, OBA # 20340
**SOLOMONSIMMONSLAW**

33

601 South Boulder Avenue, Suite 600
Tulsa, Oklahoma 74119
Phone: (918) 551-8999
Fax:    (918) 582-6106
Email:  dss@solomonsimmons.com

*-and-*

J. Spencer Bryan, OBA # 19419
Steven J. Terrill, OBA # 20869
**BRYAN & TERRILL LAW, PLLC**
9 East 4th St., Suite 307
Tulsa, Oklahoma 74103
Phone: (918) 935-2777
Fax:    (918) 935-2778
Email:  jsbryan@bryanterrill.com
        sjterrill@bryanterrill.com

*Attorneys for Plaintiff*



# IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
## STATE OF OKLAHOMA

ROMA PRESLEY, AS SPECIAL )
ADMINISTRATOR OF THE ESTATE OF )
JOSHUA WAYNE HARVEY, )
)
         Plaintiff, )
)
v. )
) CASE NO. CJ-2020-1518
) THE HONORABLE DOUG DRUMMOND
CITY OF TULSA, a municipal corporation; )
NIGEL HARRIS, individually; )
STEVEN DOUGLAS, individually; )
JAYE TAYLOR, individually; )
PATRICK DUNLAP, individually; )
CHARLES JORDAN, individually; )
AMERICAN MEDICAL RESPONSE )
AMBULANCE SERVICE, INC., a foreign )
corporation; )
)
         Defendants. )
)

DISTRICT COURT
**F I L E D**

JUL 2 8 2020

DON NEWBERRY, Court Clerk
STATE OF OKLA, TULSA COUNTY

## ORIGINAL SUMMONS

SERVE BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Nigel Harris

TO THE ABOVE-NAMED DEFENDANT:

You have been sued by the above-named Plaintiff, and you are directed to file a written answer to the attached petition in the court of the above address within **twenty (20)** days after service of this summons upon you, exclusive of the day of service. Within the same time, a copy of your answer must be delivered or mailed to the attorney for the Plaintiff. Unless you answer the petition within the time stated, judgment will be rendered against you with costs of the action.

Issued this \_\_\_\_ day of June, 2020.

DON NEWBERRY, COURT CLERK

By: _____
        DEPUTY COURT CLERK

(SEAL)

This summons was served on the **20** day of **July** , 2020.

_____
(Signature of person serving summons)

**YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER. SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS**



**Ken Corbin, Process Server**

## PROOF OF SERVICE

Attorney: D. Solomon         Origin     Tulso co.         Case No. CJ-2020-1518

I, Ken Corbin, being duly sworn, certify that I received the following document(s) to wit:

| | | |
|---|---|---|
| ☒ Summons & Petition/Complaint | ___ Motion To Modify _____ | ___ HOA |
| ___ Small Claims Affidavit/Order | ___ Subpoena _____ | ___ Status Conf. |
| ___ Forcible Entry & Detainer | ___ Garnishment _____ | ___ Hearing |
| ___ Other _____ | | |

Personal Service: by delivering a true copy of said process to: Nigel Harris

at 600 Civic Center _____ on 7/20/20 at 1:10 p.m.

Usual Place Of Residence: by leaving a copy of said process for _____

with _____ resident/family member 15 years of age or older on _____ at

_____ which is his/her usual place of residence.

Corporation/Partnership: by delivering a true copy of said process to: _____

he/she being the Registered Agent/officer/partner/person in charge thereof at the time of said entity located at

_____ on _____ at _____.

Posted: by posting a true & correct copy of said process to the premises at _____

which is the possession of named Defendant(s) _____ and that on _____,

mailed a copy of same by Certified Mail, Return Receipt Requested # _____

Not Found: said process was not served for the following reason(s): _____

_____

Miscellaneous: _____

### AFFIDAVIT

I, Ken Corbin, the undersigned, say under oath & under penalty of perjury that I served the above process & made return thereon & that I am duly authorized to make this affidavit.

Ken Corbin                     License # PSS 2019-26

Subscribed and sworn to before me _____ , Notary, on this 28 day

of July _____ , 20 20 .

KATHALEEN S. DANIELS
Notary Public in and for
STATE OF OKLAHOMA
Commission #00003633
Expires: April 6, 2024



# IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
## STATE OF OKLAHOMA

ROMA PRESLEY, AS SPECIAL )
ADMINISTRATOR OF THE ESTATE OF )
JOSHUA WAYNE HARVEY, )
)
      Plaintiff, )
)
v. )
) CASE NO. CJ-2020-1518
) THE HONORABLE DOUG DRUMMOND
CITY OF TULSA, a municipal corporation; )
NIGEL HARRIS, individually; )
STEVEN DOUGLAS, individually; )
JAYE TAYLOR, individually; )
PATRICK DUNLAP, individually; )
CHARLES JORDAN, individually; )
AMERICAN MEDICAL RESPONSE )
AMBULANCE SERVICE, INC., a foreign )
corporation; )
)
      Defendants. )
)

DISTRICT COURT
**F I L E D**

JUL 2 8 2020

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

## ORIGINAL SUMMONS

SERVE BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Steven Douglas

    TO THE ABOVE-NAMED DEFENDANT:

You have been sued by the above-named Plaintiff, and you are directed to file a written answer to the attached petition in the court of the above address within **twenty (20)** days after service of this summons upon you, exclusive of the day of service. Within the same time, a copy of your answer must be delivered or mailed to the attorney for the Plaintiff. Unless you answer the petition within the time stated, judgment will be rendered against you with costs of the action.

    Issued this _____ day of June, 2020.

                      DON NEWBERRY, COURT CLERK

                      By:_____

                      DEPUTY COURT CLERK

(SEAL)

This summons was served on the 20ᵗʰ day of _July_____, 2020.

                _____
                (Signature of person serving summons)

**YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER. SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS**

**Ken Corbin, Process Server**

## PROOF OF SERVICE

Attorney: _D. Solomon_     Origin _Tulsa Co._     Case No. _CJ-2020-1518_

I, Ken Corbin, being duly sworn, certify that I received the following document(s) to wit:

X Summons & Petition/Complaint    ___ Motion To Modify _____    ___HOA

___ Small Claims Affidavit/Order    ___ Subpoena _____    ___Status Conf.

___ Forcible Entry & Detainer    ___ Garnishment _____    ___Hearing

___ Other _____

Personal Service: by delivering a true copy of said process to: _Steven Douglas_

at _600 Civic Center        Tulsa, OK_   on _7/20/20_ at _1:00 P.M._

Usual Place Of Residence: by leaving a copy of said process for _____

with _____ resident/family member 15 years of age or older on _____ at

_____ which is his/her usual place of residence.

Corporation/Partnership: by delivering a true copy of said process to: _____

he/she being the Registered Agent/officer/partner/person in charge thereof at the time of said entity located at

_____ on _____ at _____.

Posted: by posting a true & correct copy of said process to the premises at _____

which is the possession of named Defendant(s) _____ and that on _____,

mailed a copy of same by Certified Mail, Return Receipt Requested # _____.

Not Found: said process was not served for the following reason(s): _____

_____

Miscellaneous: _____

### AFFIDAVIT

I, Ken Corbin, the undersigned, say under oath & under penalty of perjury that I served the above process & made
return thereon & that I am duly authorized to make this affidavit.

_____
Ken Corbin     License # PSS 2019-26

Subscribed and sworn to before me _Kathaleen S Daniel_ , Notary, on this _28_ day

of _July_ , 20_20_ .

KATHALEEN S. DANIELS
Notary Public in and for
STATE OF OKLAHOMA
Commission #00003633
Expires: April 6, 2024



* 1 0 4 7 3 4 0 6 8 7 *

## IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
## STATE OF OKLAHOMA

ROMA PRESLEY, AS SPECIAL )
ADMINISTRATOR OF THE ESTATE OF )
JOSHUA WAYNE HARVEY, )
             )
     Plaintiff, )
             )
v. )
             )    CASE NO. CJ-2020-1518
             )    THE HONORABLE DOUG DRUMMOND
CITY OF TULSA, a municipal corporation; )
NIGEL HARRIS, individually; )
STEVEN DOUGLAS, individually; )
JAYE TAYLOR, individually; )
PATRICK DUNLAP, individually; )
CHARLES JORDAN, individually; )
AMERICAN MEDICAL RESPONSE )
AMBULANCE SERVICE, INC., a foreign )
corporation; )
             )
     Defendants. )
             )

DISTRICT COURT
F I L E D

JUL 2 8 2020

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

### ORIGINAL SUMMONS

SERVE BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Jaye Taylor

TO THE ABOVE-NAMED DEFENDANT:

You have been sued by the above-named Plaintiff, and you are directed to file a written answer to the attached petition in the court of the above address within **twenty (20)** days after service of this summons upon you, exclusive of the day of service. Within the same time, a copy of your answer must be delivered or mailed to the attorney for the Plaintiff. Unless you answer the petition within the time stated, judgment will be rendered against you with costs of the action.

Issued this _____ day of June, 2020.

DON NEWBERRY, COURT CLERK

By: _____
      DEPUTY COURT CLERK

(SEAL)

This summons was served on the 20ᵗ day of Jun , 2020.

_____ 2019. 26
(Signature of person serving summons)

**YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER. SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS**

**Ken Corbin, Process Server**

## PROOF OF SERVICE

Attorney: __D. Soloman__          Origin __TULSA CO.__          Case No. __CJ-2020-1518__

I, Ken Corbin, being duly sworn, certify that I received the following document(s) to wit:

☒ Summons & Petition/Complaint     ___ Motion To Modify _____     ___ HOA

___ Small Claims Affidavit/Order        ___ Subpoena _____          ___ Status Conf.

___ Forcible Entry & Detainer            ___ Garnishment _____       ___ Hearing

___ Other _____

Personal Service: by delivering a true copy of said process to: __Jay E. Taylor_____

at __1000 Civic Center_____ __Tulsa, OK_____ on __7/20/20__ at __1:00 p.m.__

Usual Place Of Residence: by leaving a copy of said process for _____

with _____ resident/family member 15 years of age or older on _____ at

_____ which is his/her usual place of residence.

Corporation/Partnership: by delivering a true copy of said process to: _____

he/she being the Registered Agent/officer/partner/person in charge thereof at the time of said entity located at

_____ on _____ at _____.

Posted: by posting a true & correct copy of said process to the premises at _____

which is the possession of named Defendant(s) _____ and that on _____,

mailed a copy of same by Certified Mail, Return Receipt Requested # _____.

Not Found: said process was not served for the following reason(s): _____

_____

Miscellaneous: _____

### AFFIDAVIT

I, Ken Corbin, the undersigned, say under oath & under penalty of perjury that I served the above process & made
return thereon & that I am duly authorized to make this affidavit.

Ken Corbin                    License # PSS 2019-26

Subscribed and sworn to before me _Kathaleen S. Daniels_____, Notary, on this __28__ day

of __July_____, 20__20__.

KATHALEEN S. DANIELS
Notary Public in and for
STATE OF OKLAHOMA
Commission #00003633
Expires: April 6, 2024



## IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
## STATE OF OKLAHOMA

ROMA PRESLEY, AS SPECIAL                     )
ADMINISTRATOR OF THE ESTATE OF               )
JOSHUA WAYNE HARVEY,                         )
                                             )
            Plaintiff,                       )
                                             )
v.                                           )
                                             )   CASE NO. CJ-2020-1518
                                             )   THE HONORABLE DOUG DRUMMOND
CITY OF TULSA, a municipal corporation;      )
NIGEL HARRIS, individually;                  )
STEVEN DOUGLAS, individually;                )
JAYE TAYLOR, individually;                   )
PATRICK DUNLAP, individually;                )           DISTRICT COURT
CHARLES JORDAN, individually;                )       F I L E D
AMERICAN MEDICAL RESPONSE                    )
AMBULANCE SERVICE, INC., a foreign           )           JUL 2 8 2020
corporation;                                 )
                                             )   DON NEWBERRY, Court Clerk
            Defendants.                       )   STATE OF OKLA. TULSA COUNTY
                                             )

## ORIGINAL SUMMONS

SERVE BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Patrick Dunlap

        TO THE ABOVE-NAMED DEFENDANT:

You have been sued by the above-named Plaintiff, and you are directed to file a written answer to the attached petition in the court of the above address within **twenty (20)** days after service of this summons upon you, exclusive of the day of service. Within the same time, a copy of your answer must be delivered or mailed to the attorney for the Plaintiff. Unless you answer the petition within the time stated, judgment will be rendered against you with costs of the action.

        Issued this ____ day of June, 2020.

                                DON NEWBERRY, COURT CLERK

                                By: _____
                                    DEPUTY COURT CLERK

(SEAL)

        This summons was served on the _20_ day of _July_ , 2020.

                                _____. 2019-26
                                (Signature of person serving summons)

**YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER. SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS**

**Ken Corbin, Process Server**

## PROOF OF SERVICE

Attorney: _D. Suloman_    Origin _Tulsa Co_    Case No. _CJ-2020-1518_

I, Ken Corbin, being duly sworn, certify that I received the following document(s) to wit:

X Summons & Petition/Complaint    ___ Motion To Modify _____    ___ HOA

___ Small Claims Affidavit/Order    ___ Subpoena _____    ___ Status Conf.

___ Forcible Entry & Detainer    ___ Garnishment _____    ___ Hearing

___ Other _____

_____

Personal Service: by delivering a true copy of said process to: _Patrick Dunlap_ _____

at _600 Civic Center_   _Tulsa, OK_    on _7/20/20_ at _1:00 P.M._

Usual Place Of Residence: by leaving a copy of said process for _____

with _____ resident/family member 15 years of age or older on _____ at

_____ which is his/her usual place of residence.

Corporation/Partnership: by delivering a true copy of said process to: _____

he/she being the Registered Agent/officer/partner/person in charge thereof at the time of said entity located at

_____ on _____ at _____.

Posted: by posting a true & correct copy of said process to the premises at _____

which is the possession of named Defendant(s) _____ and that on _____,

mailed a copy of same by Certified Mail, Return Receipt Requested # _____.

Not Found: said process was not served for the following reason(s): _____

_____

Miscellaneous: _____

## AFFIDAVIT

I, Ken Corbin, the undersigned, say under oath & under penalty of perjury that I served the above process & made
return thereon & that I am duly authorized to make this affidavit.

Ken Corbin     License # PSS 2019-26

Subscribed and sworn to before me _Kathaleen S. Daniel_ , Notary, on this _28_ day

of _July_ , 20 _20_.

KATHALEEN S. DANIELS
Notary Public in and for
STATE OF OKLAHOMA
Commission #00003633
Expires: April 6, 2024



# IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
## STATE OF OKLAHOMA

ROMA PRESLEY, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF JOSHUA WAYNE HARVEY, )
)
)
)

       Plaintiff, )
)

v. )
)
) CASE NO. CJ-2020-1518
) THE HONORABLE DOUG DRUMMOND

CITY OF TULSA, a municipal corporation; )
NIGEL HARRIS, individually; )
STEVEN DOUGLAS, individually; )
JAYE TAYLOR, individually; )
PATRICK DUNLAP, individually; )
CHARLES JORDAN, individually; )
AMERICAN MEDICAL RESPONSE )
AMBULANCE SERVICE, INC., a foreign )
corporation; )
)
       Defendants. )
)

DISTRICT COURT
F I L E D

JUL 2 8 2020

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

## ORIGINAL SUMMONS

SERVE BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Charles Jordan

    TO THE ABOVE-NAMED DEFENDANT:

You have been sued by the above-named Plaintiff, and you are directed to file a written answer to the attached petition in the court of the above address within **twenty (20)** days after service of this summons upon you, exclusive of the day of service. Within the same time, a copy of your answer must be delivered or mailed to the attorney for the Plaintiff. Unless you answer the petition within the time stated, judgment will be rendered against you with costs of the action.

    Issued this _____ day of June, 2020.

DON NEWBERRY, COURT CLERK

By _____
DEPUTY COURT CLERK

(SEAL)

This summons was served on the 20⁺ day of July , 2020.

_____. 2019-26
(Signature of person serving summons)

**YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER. SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS**



**Ken Corbin, Process Server**

## PROOF OF SERVICE

Attorney: _D. Soloman_     Origin _TULSA CO._     Case No. _CJ-2020-1518_

I, Ken Corbin, being duly sworn, certify that I received the following document(s) to wit:

| | | |
|---|---|---|
| x Summons & Petition/Complaint | ___ Motion To Modify _____ | ___ HOA |
| ___ Small Claims Affidavit/Order | ___ Subpoena _____ | ___ Status Conf. |
| ___ Forcible Entry & Detainer | ___ Garnishment _____ | ___ Hearing |
| ___ Other _____ | | |

Personal Service: by delivering a true copy of said process to: _Charles Jordan_

at _175 E. 2nd St.   Tulsa, OK_ _____ on _7/20/20_ at _1:20 P.M._

Usual Place Of Residence: by leaving a copy of said process for _____

with _____ resident/family member 15 years of age or older on _____ at

_____ which is his/her usual place of residence.

Corporation/Partnership: by delivering a true copy of said process to: _____

he/she being the Registered Agent/officer/partner/person in charge thereof at the time of said entity located at

_____ on _____ at _____ .

Posted: by posting a true & correct copy of said process to the premises at _____

which is the possession of named Defendant(s) _____ and that on _____ ,

mailed a copy of same by Certified Mail, Return Receipt Requested # _____ .

Not Found: said process was not served for the following reason(s): _____

_____

Miscellaneous: _____

### AFFIDAVIT

I, Ken Corbin, the undersigned, say under oath & under penalty of perjury that I served the above process & made return thereon & that I am duly authorized to make this affidavit.

_____
Ken Corbin     License # PSS 2019-26

Subscribed and sworn to before me _Kathaleen S. Daniel_ , Notary, on this _28_ day

of _July_ , 20 _20_ .

KATHALEEN S. DANIELS
Notary Public in and for
STATE OF OKLAHOMA
Commission #00003833
Expires: April 6, 2024





IN THE DISTRICT COURT OF TULSA COUNTY
STATE OF OKLAHOMA

ROMA PRESLEY, as Special Administrator of the Estate
of Joshua Wayne Harvey,

        Plaintiff,

v.

CITY OF TULSA, a municipal corporation;
NIGEL HARRIS, individually;
STEVEN DOUGLAS, individually;
JAYE TAYLOR, individually;
PATRICK DUNLAP, individually;
CHARLES JORDAN, individually; and
AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE,
INC., a foreign corporation;

        Defendants.

Case No. CJ-2020-1518

Judge Doug Drummond



JUN − 2 2020

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

### DEFENDANT AMERICAN MEDICAL RESPONSE
### AMBULANCE SERVICE, INC.'S SPECIAL APPEARANCE AND
### RESERVATION OF ADDITIONAL TIME TO ANSWER OR OTHERWISE PLEAD

COMES NOW Defendant, American Medical Response Ambulance Service, Inc., and makes

this Special Appearance and Reservation of Time reserving an additional twenty (20) days through

June 16, 2020 pursuant to Title 12 O.S. §2012(a) and *Young v. Walton*, 1991 OK 20, 807 P.2d 248,

fully preserving any and all defenses under Title 12 O.S. §2012(b).

Respectfully submitted,

RHODES, HIERONYMUS, JONES, TUCKER
   & GABLE, P.L.L.C.

BY: _____

NATHAN E. CLARK, OBA #17275
Two West 2nd Street, Suite 1000 (74103-3131)
P.O. Box 21100
Tulsa, Oklahoma 74121-1100
Telephone:   918/582-1173
Facsimile:   918/592-3390
nclark@rhodesokla.com
ATTORNEYS FOR DEFENDANT, AMERICAN MEDICAL
   RESPONSE AMBULANCE SERVICE, INC.

### CERTIFICATE OF MAILING

I, hereby certify that on this 2nd day of June, 2020, I caused to be mailed a true and correct
copy of the within and foregoing instrument to:

Damario Donti Solomon-Simmons
SOLOMONSIMMONSLAW
601 S. Boulder, Suite 600
Tulsa, OK 74119
dss@solomonsimmons.com

   *-and-*

J. Spencer Bryan
Steven J. Terrill
BRYAN & TERRILL LAW, PLLC
3015 E. Skelly Drive, Suite 400
Tulsa, OK 74105
jsbryan@bryanterrill.com
sjterrill@bryanterrill.com

*Attorneys for Plaintiff*

_____

2





IN THE DISTRICT COURT OF TULSA COUNTY
STATE OF OKLAHOMA

ROMA PRESLEY, as Special Administrator of the Estate
of Joshua Wayne Harvey,

        Plaintiff,

v.

CITY OF TULSA, a municipal corporation;
NIGEL HARRIS, individually;
STEVEN DOUGLAS, individually;
JAYE TAYLOR, individually;
PATRICK DUNLAP, individually;
CHARLES JORDAN, individually; and
AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE,
INC., a foreign corporation;

        Defendants.

Case No. CJ-2020-1518

Judge Doug Drummond



DISTRICT COURT
F I L E D

JUN 1 6 2020

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

## ANSWER OF AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE, INC.

COMES NOW, Defendant American Medical Response Ambulance Service, Inc. ("AMRAS"), and in response to the Petition of Plaintiff hereby states as follows:

### I.

### INTRODUCTION

AMRAS objects to the Introduction contained in Plaintiff's Petition as it violates the simple factual averment requirements of OKLA. STAT. tit. 12, § 2008(e). AMRAS would further state that many of the allegations contained in Introduction of Plaintiff's Petition relate to the conduct of Tulsa Police Department officers for the City of Tulsa to which no response from AMRAS is necessary, and AMRAS further lacks sufficient information to admit or deny the same. As a result, AMRAS specifically denies any and all allegations of negligence as to AMRAS. AMRAS further generally denies all of the allegations contained in the Introduction of Plaintiff's Petition and puts Plaintiff to

strict proof thereof.  Finally, AMRAS admits that its emergent team members were acting in the course and scope of their employment at the time of this circumstance.

## II.

### PARTIES, JURISDICTION AND VENUE

1.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 1 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

2.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 2 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

3.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 3 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

4.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 4 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

5.     AMRAS admits the allegations of Paragraph 5 of Plaintiff's Petition.

6.     AMRAS admits that jurisdiction and venue are appropriate in Tulsa County as to the claims made against AMRAS.

7.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 7 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

## III.

### STATEMENT OF FACTS

8.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 8 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

9.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 9 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

10.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 10 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

11.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 11 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

12.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 12 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

13.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 13 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

14.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 14 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

15.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 15 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

16.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 16 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

17.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 17 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

18.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 18 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

19.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 19 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

20.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 20 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

21.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 21 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

4

22.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 22 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

23.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 23 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

24.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 24 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

25.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 25 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

26.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 26 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

27.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 27 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

28.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 28 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

29.    AMRAS is without sufficient information to admit or deny the allegations of Paragraph 29 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

30.    AMRAS is without sufficient information to admit or deny the allegations of Paragraph 30 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

31.    AMRAS is without sufficient information to admit or deny the allegations of Paragraph 31 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

32.    AMRAS is without sufficient information to admit or deny the allegations of Paragraph 32 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

33.    AMRAS is without sufficient information to admit or deny the allegations of Paragraph 33 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

34.    AMRAS is without sufficient information to admit or deny the allegations of Paragraph 34 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

35.    AMRAS is without sufficient information to admit or deny the allegations of Paragraph 35 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

36.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 36 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

37.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 37 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

38.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 38 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

39.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 39 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

40.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 40 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

41.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 41 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

42.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 42 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

43.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 43 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

44.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 44 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

45.     (a-c). AMRAS is without sufficient information to admit or deny the allegations of Paragraph 45(a-c) of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

46.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 46 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

47.     AMRAS admits that portion of Paragraph 47 of Plaintiff's Petition that EMTs, employed by AMRAS arrived at the scene. AMRAS denies the remaining allegations in this paragraph.

48.     AMRAS denies the allegations of Paragraph 48 of Plaintiff's Petition.

49.     AMRAS denies the allegations of Paragraph 49 of Plaintiff's Petition.

50.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 50 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

51.     AMRAS denies the allegations of Paragraph 51 of Plaintiff's Petition.

52.     AMRAS denies the allegations of Paragraph 52 of Plaintiff's Petition.

8

53.   AMRAS is without sufficient information to admit or deny the allegations of Paragraph 53 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

54.   AMRAS is without sufficient information to admit or deny the allegations of Paragraph 54 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

55.   AMRAS is without sufficient information to admit or deny the allegations of Paragraph 55 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

56.   AMRAS is without sufficient information to admit or deny the allegations of Paragraph 56 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

57.   AMRAS is without sufficient information to admit or deny the allegations of Paragraph 57 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

58.   AMRAS is without sufficient information to admit or deny the allegations of Paragraph 58 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof. As to Paragraph 58(a), AMRAS denies the allegations of Paragraph 58(a) of Plaintiff's Petition.

59.   AMRAS denies the allegations of Paragraph 59 of Plaintiff's Petition.

60.   AMRAS denies the allegations of Paragraph 60 of Plaintiff's Petition.

61.   AMRAS denies the allegations of Paragraph 61 of Plaintiff's Petition.

62.   AMRAS denies the allegations of Paragraph 62 of Plaintiff's Petition.

9

63.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 63 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

64.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 64 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

65.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 65 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

66.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 66 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

67.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 67 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

68.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 68 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

69.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 69 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

70.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 70 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

71.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 71 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

72.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 72 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

73.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 73 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

74.     (a-e). AMRAS is without sufficient information to admit or deny the allegations of Paragraph 74(a-e) of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

75.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 75 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

76.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 76 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

77.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 77 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

78.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 78 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

79.     AMRAS is without sufficient information to admit or deny the allegations of Paragraph 79 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

## IV.

### Statement of Claims

#### Count 1
#### 42 U.S.C. § 1983 – Fourth Amendment Violation – Excess Force
#### (as to all Law Enforcement Defendants)

80.     AMRAS adopts and incorporates its prior responses as if fully set forth herein.

81.     The allegations in Paragraph 81 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required.  To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 81 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

82.     The allegations in Paragraph 82 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required.  To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 82

12

of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

83.      The allegations in Paragraph 83 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required.  To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 83 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

84.      The allegations in Paragraph 84 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required.  To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 84 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

85.      (a-e).  The allegations in Paragraph 85(a-e) of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required.  To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 85(a-e) of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

86.      (a-d).  The allegations in Paragraph 86(a-d) of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required.  To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 86(a-d) of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

87.     The allegations in Paragraph 87 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 87 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

88.     The allegations in Paragraph 88 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 88 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

89.     The allegations in Paragraph 89 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 89 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

90.     The allegations in Paragraph 90 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 90 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

91.     The allegations in Paragraph 91 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 91

14

of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

**Count 2**
**42 U.S.C. § 1983 – Fourteenth Amendment Violation – Deprivation of Life Without Due Process**
**(as to all Law Enforcement Defendants)**

92.     AMRAS adopts and incorporates its prior responses as if fully set forth herein.

93.     The allegations in Paragraph 93 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 93 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

94.     The allegations in Paragraph 94 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 94 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

95.     The allegations in Paragraph 95 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 95 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

96.     The allegations in Paragraph 96 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary,

however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 96 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

97.     The allegations in Paragraph 97 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 97 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

98.     The allegations in Paragraph 98 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 98 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

99.     The allegations in Paragraph 99 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 99 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

100.    The allegations in Paragraph 100 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 100 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

16

101.    The allegations in Paragraph 101 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required.  To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 101 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

102.    The allegations in Paragraph 102 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required.  To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 102 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

103.    The allegations in Paragraph 103 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required.  To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 103 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

### Count 3
### 42 U.S.C. § 1983 – Fourteenth Amendment Violation – Deliberate Indifference to Medical Need
### (as to all Law Enforcement Defendants)

104.    AMRAS adopts and incorporates its prior responses as if fully set forth herein.

105.    The allegations in Paragraph 105 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required.  To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph

105 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

106.   The allegations in Paragraph 106 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required.  To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 106 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

107.   (a-e).  The allegations in Paragraph 107(a-e) of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required.  To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 107(a-e) of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

108.   The allegations in Paragraph 108 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required.  To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 108 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

109.   The allegations in Paragraph 109 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required.  To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 109 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

110.    The allegations in Paragraph 110 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 110 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

## Count 4
### 42 U.S.C. § 1983 – Fourteenth Amendment Violation – Deliberately Indifferent Practices, Customs, Training, Supervision, and Ratification – *Monell* Claim (as to the City)

111.    AMRAS adopts and incorporates its prior responses as if fully set forth herein.

112.    The allegations in Paragraph 112 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 112 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

113.    The allegations in Paragraph 113 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 113 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

114.    The allegations in Paragraph 114 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph

114 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

115.    The allegations in Paragraph 115 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 115 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

116.    The allegations in Paragraph 116 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 116 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

117.    The allegations in Paragraph 117 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 117 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

118.    The allegations in Paragraph 118 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 118 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

119.     The allegations in Paragraph 119 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 119 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

120.     The allegations in Paragraph 120 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 120 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

121.     The allegations in Paragraph 121 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 121 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

122.     The allegations in Paragraph 122 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 122 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

123.     The allegations in Paragraph 123 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph

123 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

124.    The allegations in Paragraph 124 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 124 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

125.    The allegations in Paragraph 125 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 125 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

126.    The allegations in Paragraph 126 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 126 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

127.    The allegations in Paragraph 127 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 127 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

128.    The allegations in Paragraph 128 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 128 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

129.    The allegations in Paragraph 129 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 129 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

130.    The allegations in Paragraph 130 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 130 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

131.    The allegations in Paragraph 131 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 131 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

132.    The allegations in Paragraph 132 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph

132 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

133.   The allegations in Paragraph 133 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required.  To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 133 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

**Count 6 (sic)**
**42 U.S.C. § 1983 – Fourteenth Amendment Violation – Supervisor Liability**
**(as to Defendant Jordan)**

134.   AMRAS adopts and incorporates its prior responses as if fully set forth herein.

135.   The allegations in Paragraph 135 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required.  To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 135 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

136.   The allegations in Paragraph 136 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required.  To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 136 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

137.   The allegations in Paragraph 137 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required.  To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph

137 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

138.    The allegations in Paragraph 138 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 138 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

139.    The allegations in Paragraph 139 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 139 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

140.    The allegations in Paragraph 140 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 140 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

141.    The allegations in Paragraph 141 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 141 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

142.   The allegations in Paragraph 142 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 142 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

143.   The allegations in Paragraph 143 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 143 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

144.   The allegations in Paragraph 144 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 144 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

145.   The allegations in Paragraph 145 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 145 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

## Count 6
## 42 U.S.C. §§ 12101-213 – Deliberate Indifference to Rights Secured under the Americans with Disabilities Act (ADA)
### (as to the City)

146.    AMRAS adopts and incorporates its prior responses as if fully set forth herein.

147.    The allegations in Paragraph 147 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 147 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

148.    The allegations in Paragraph 148 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 148 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

149.    The allegations in Paragraph 149 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 149 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

150.    The allegations in Paragraph 150 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph

150 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

151.    The allegations in Paragraph 151 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 151 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

152.    The allegations in Paragraph 152 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 152 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

153.    The allegations in Paragraph 153 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 153 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

**Count 7**
**Common Law – Negligence**
**(as to the City)**

154.    AMRAS adopts and incorporates its prior responses as if fully set forth herein.

155.    The allegations in Paragraph 155 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph

28

155 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

## Count 8
### Statutory Liability – Excessive Force
### (as to the City)

156. AMRAS adopts and incorporates its prior responses as if fully set forth herein.

157. The allegations in Paragraph 157 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 157 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

158. The allegations in Paragraph 158 of Plaintiff's Petition are expressly not directed towards AMRAS, and no response is therefore required. To the extent that a response is necessary, however, AMRAS is without sufficient information to admit or deny the allegations of Paragraph 158 of Plaintiff's Petition, and the same are therefore generally denied, and Plaintiff is put to strict proof thereof.

## Count 9
### Common Law – Negligent Training and Supervision
### (as to Defendant AMR)

159. AMRAS adopts and incorporates its prior responses as if fully set forth herein.

160. AMRAS objects to Paragraph 160 of Plaintiff's Petition as requesting a conclusion of law as opposed to an averment of fact. To the extent an answer is necessary, AMRAS would deny that Plaintiff has fully and correctly described Oklahoma law, and AMRAS will therefore deny the same and put Plaintiff to strict proof thereof.

161. AMRAS denies the allegations of Paragraph 161 of Plaintiff's Petition.

29

162.    AMRAS denies the allegations of Paragraph 162 of Plaintiff's Petition.

163.    AMRAS denies the allegations of Paragraph 163 of Plaintiff's Petition.

164.    AMRAS denies the allegations of Paragraph 164 of Plaintiff's Petition.

165.    AMRAS denies the allegations of Paragraph 165 of Plaintiff's Petition.

### Count 10
### Common Law – Negligence – Vicarious Liability
### (as to Defendant AMR)

166.    AMRAS adopts and incorporates its prior responses as if fully set forth herein.

167.    AMRAS objects to Paragraph 167 of Plaintiff's Petition as requesting a conclusion of law as opposed to an averment of fact.  To the extent an answer is necessary, AMRAS would deny that Plaintiff has fully and correctly described Oklahoma law, and AMRAS will therefore deny the same and put Plaintiff to strict proof thereof.

168.    AMRAS admits that Mr. Close and Mr. Meyer were employed with AMRAS at the time of this transport as alleged in Paragraph 168 of Plaintiff's Petition.

169.    AMRAS admits that Mr. Close and Mr. Meyer were acting within the course and scope in their employment at the time of this transport as alleged in Paragraph 169 of Plaintiff's Petition.

170.    AMRAS denies the allegations of Paragraph 170 of Plaintiff's Petition.

171.    AMRAS objects to Paragraph 171 of Plaintiff's Petition as requesting a conclusion of law as opposed to an averment of fact.  To the extent an answer is necessary, AMRAS would deny that Plaintiff has fully and correctly described Oklahoma law, and AMRAS will therefore deny the same and put Plaintiff to strict proof thereof.

172.    AMRAS denies the allegations of Paragraph 172 of Plaintiff's Petition.

173.    AMRAS denies the allegations of Paragraph 173 of Plaintiff's Petition.

174.   AMRAS denies the allegations of Paragraph 174 of Plaintiff's Petition.

175.   AMRAS denies the allegations of Paragraph 175 of Plaintiff's Petition.

176.   AMRAS denies the allegations of Paragraph 176 of Plaintiff's Petition.

177.   AMRAS denies the allegations of Paragraph 177 of Plaintiff's Petition.

178.   AMRAS denies the allegations of Paragraph 178 of Plaintiff's Petition.

## Count 11
### Wrongful Death
### (as to All Defendants)

179.   AMRAS denies liability for Plaintiff's Oklahoma wrongful death claim as alleged in Paragraph 179 of Plaintiff's Petition.   AMRAS admits, however, a wrongful death claim is distinguishable from a survival claim. AMRAS denies the remaining allegations in this paragraph.

180.   AMRAS denies the allegations of Paragraph 180 of Plaintiff's Petition.

## Count 12
### Survival Claim
### (as to All Defendants)

181.   AMRAS denies the allegations of Paragraph 181 of Plaintiff's Petition.

AMRAS denies the Prayer for Relief contained in Plaintiff's Petition.

## AFFIRMATIVE DEFENSES

1.   AMRAS affirmatively denies the care and treatment provided was negligent in any respect and was instead in accordance with the prevailing standard of care.

2.   AMRAS denies that any of its agents, servants or employees was negligent in any way concerning the care and treatment of the deceased, Mr. Harvey.

3.   AMRAS states that all of the care and treatment provided meets or exceeds the applicable standard of care.

31

4.      AMRAS asserts that the damages allegedly sustained by the deceased were alternatively caused by his general medical conditions, diseases, infections, or injury and/or the result of pre-existing, unforeseeable or unavoidable complications due to the underlying conditions or injury of the deceased for which AMRAS is not responsible.

5.      AMRAS asserts that the damages allegedly sustained in this case are limited by the Affordable Access to Healthcare Act and by *Okla. Stat.* tit. 12, § 3009.1 and by *Okla. Stat.* tit. 23, §61.2.

6.      Should AMRAS be found to have breached the standard of care in any respect, which is not admitted but is expressly denied, AMRAS states that any such breach was not the proximate cause of the deceased's medical outcome.

7.      AMRAS affirmatively asserts that any damages sustained by the deceased were due to other unrelated conditions and/or the result of unperceivable and unavoidable complications due to the underlying conditions of the deceased for which AMRAS is not responsible.

8.      For further answer and defense, AMRAS states that the deceased's condition was the result of an unavoidable incident, casualty and/or misfortune occurring without fault on the part of AMRAS.

9.      In the alternative, AMRAS states that the alleged injuries to the deceased were proximately caused by the negligence of third parties over whom AMRAS had no control and for whom AMRAS was not responsible.

10.     AMRAS is entitled to a credit or offset for all consideration paid to Plaintiff by virtue of any type or form of settlement agreement entered into by between the Plaintiff and any other party or entity in regard to this circumstance.

11.     The case may also involve issues associated with "loss of chance" type claims.

32

12.     AMRAS would request this Court dismiss Plaintiff's claim for punitive damages as there is no evidence to support a punitive damages claim against them.

13.     AMRAS would state that Plaintiff's claim for punitive damages is unconstitutional and violates the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and of Article II, Section 7 of the Oklahoma Constitution for the following reasons:

      a.     The standards under which claims are submitted are so vague as to be effectively meaningless and threaten deprivation of property for the benefit for society without the protection of fundamentally fair procedures;

      b.     The highly penal nature of punitive damages threatens the possibility of excessive punishment and almost limitless liability without the benefit of fundamentally fair procedures or any statutory limitations; and,

      c.     The introduction of evidence of the Defendants' financial worth is so prejudicial as to impose liability and punishment in a manner bearing no relation to the extent of any injury allegedly inflicted or to any benefit to Plaintiff from any alleged wrongdoing, and therefore, any verdict would be the result of bias and prejudice in a fundamentally unfair manner.

14.     AMRAS further states that Plaintiff's claim for punitive damages constitutes an unconstitutionally excessive fine under Article II, Section 9 of the Oklahoma Constitution because such highly penal sanctions may be imposed for the benefit of society under standards so vague and effectively meaningless as to threaten unlimited punishment bearing no relation to the extent of any injury allegedly inflicted at the unbridled discretion of the jury.

15.     AMRAS reserves the right to amend this Answer to state differing denials, affirmative defenses, counterclaims, cross claims and/or third-party claims during the course of discovery.

33

16.    Any and all affirmative defenses asserted by the remaining Defendants.

WHEREFORE, premises considered, Defendant, American Medical Response Ambulance Service, Inc., hereby moves the Court to dismiss the matter, deny Plaintiff the relief sought in Plaintiff's "prayer for relief," award AMRAS attorney's fees and costs, and for any and all other relief which this Court deems just and equitable.

Respectfully submitted,

RHODES, HIERONYMUS, JONES, TUCKER
& GABLE, P.L.L.C.

BY:_____
NATHAN E. CLARK, OBA #17275
LINDSEY E. ALBERS, OBA #19394
Two West 2nd Street, Suite 1000 (74103-3131)
P.O. Box 21100
Tulsa, Oklahoma 74121-1100
Telephone:     918/582-1173
Facsimile:     918/592-3390
nclark@rhodesokla.com
lalbers@rhodesokla.com
ATTORNEYS FOR DEFENDANT, AMERICAN MEDICAL
  RESPONSE AMBULANCE SERVICE, INC.

34

## CERTIFICATE OF MAILING

I, hereby certify that on this __16th__ day of June, 2020, I caused to be mailed a true and correct copy of the within and foregoing instrument to:

Damario Donti Solomon-Simmons
SOLOMONSIMMONSLAW
601 S. Boulder, Suite 600
Tulsa, OK 74119
dss@solomonsimmons.com
jyork@solomonsimmons.com

   *-and-*

J. Spencer Bryan
Steven J. Terrill
BRYAN & TERRILL LAW, PLLC
3015 E. Skelly Drive, Suite 400
Tulsa, OK 74105
jsbryan@bryanterrill.com
sjterrill@bryanterrill.com

*Attorneys for Plaintiff*

Nathan Clark