UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) ROMA PRESLEY, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF JOSHUA WAYNE HARVEY, <br><br> Plaintiff, <br><br> v. <br><br> (2) CITY OF TULSA, ET AL. <br><br> Defendants. | Case No.: 20-cv-387-JFH-FHM |

**JOINT STATUS REPORT**

**Jury Demanded**:   ☒ Yes   ☐ No

**I.   Summary of Claims**: Plaintiff's allegations:

On August 24, 2018, the Defendant officers, acting pursuant to a practice that condoned, ratified, and tolerated excessive force, exposed Joshua Harvey to simultaneous and cumulative use of multiple CEWs in violation of written policy, manufacturer product warnings, and CEW training materials despite actual knowledge that Joshua was experiencing a mental health crisis.
After CEW use that far exceeded the maximum cumulative exposure of 15 seconds, the Defendant officers exerted pressure on Joshua's back and continued to do so after Joshua told them he couldn't breathe. Despite the obvious risk to Joshua, the Defendant officers continued applying pressure to his back until Joshua suffered cardiac arrest. Despite actual knowledge that Joshua was unresponsive, the Defendant officers then failed to take any reasonable steps to initiate life-sustaining measures. Joshua later died from his injuries.
Once Defendant AMRAS was on scene, the employee paramedics failed to reasonably assess Joshua's condition, failed to take control of the scene despite knowledge that Joshua was in restraints, and failed to initiate life-sustaining measures within a reasonable period of time.
Estate has alleged that the officer Defendants violated the Fourth Amendment's prohibition against excessive force, and further alleged the City and former police chief Charles Jordan failed to discipline the officers despite their obvious policy violations because the City and Jordan have adopted, enforced and maintained a practice of tolerating excessive force that is contrary to written policy. Estate has alleged this practice was the moving force behind the injuries to Joshua.
Estate has further alleged the Defendant officers exhibited deliberate indifference to Joshua's serious and emergent medical needs in violation of the Fourteenth Amendment by failing to reasonably respond to the life-threatening risk they created.

Estate has also asserted supplemental claims against the City under the Oklahoma Governmental Tort Claims Act for statutory excessive force and negligent performance of a law enforcement function, and supplemental common law negligence claims against Defendant AMRAS.

Plaintiff filed a lawsuit in Tulsa County District Court on May 5, 2020. Defendants filed to remove the case to Federal Court on August 6, 2020.  Plaintiff's claims include: Claims against the Defendant Police Officers, pursuant to 42 U.S.C. §1983, alleged violations of decedent Joshua Harvey's Fourth Amendment constitutional rights (excessive force); Claims against the Defendant Police Officers, pursuant to 42 U.S.C. §1983, alleged violations of decedent Joshua Harvey's Fourteenth Amendment constitutional rights (deprivation of life without due process); Claims against the Defendant Police Officers, pursuant to 42 U.S.C. §1983, alleged violations of decedent Joshua Harvey's Fourteenth Amendment constitutional rights (deliberate indifference to medical need); Claims against the City of Tulsa for an alleged Fourteenth Amendment violation (deliberate indifferent practices, customs, training, supervision, and ratification-*Monell* claim; against Defendant Jordan, Plaintiff alleges a claim, claim pursuant to 42 U.S.C. § 1983, for an alleged Fourteenth Amendment violation (supervisory liability); a claim pursuant to 42 U.S.C. §§ 12101-213 (deliberate indifference to rights secured under the Americans with Disabilities Act (ADA); state law claims against the City for common law negligence, statutory excessive force, and negligent training and supervision; a state law claim against American Medical Response Ambulance Service, Inc. ("AMRAS") for negligent training and supervision; also against AMRAS state law claim for negligence-vicarious liability; and against all defendants, plaintiff alleges state law claims for wrongful death and survival claim. Plaintiff also seeks punitive damages.

## II.     Summary of Defenses:
### A.  City of Tulsa Defendants

1.     Plaintiff fails to state a claim upon which relief may be granted because Joshua Harvey's constitutional rights were not violated and given the circumstance, those rights were not clearly established.  Given the totality of the circumstances, the defendant officers reasonably believed their actions were lawful. The defendant officers are entitled to Qualified Immunity.

2.     Based on Joshua Harvey's size, strength, his erratic and violent actions in physically resisting arrest and refusing to obey commands, and his imminently dangerous behavior, the force used on Joshua Harvey was at all times objectively reasonable.

3.     Joshua Harvey's failure to comply with reasonable police commands, his escalating erratic,  violent criminal behavior of breaking a locked glass door of a bank with people inside the bank, and his active resisting arrest, posed an immediate threat to the safety of the TPD officers and others, thus the officers' use of force was at all times objectively reasonable.

4.     Given the totality of the facts and circumstances known to the TPD officers at the time force was used, judged from the perspective of a reasonable office, the use of force, at all times was objectively reasonable.

5.     The defendants' actions or inactions did not proximately cause Plaintiff's injuries.

6. The City's policies were lawful and constitutional on their face, and the Plaintiff cannot prove that the City's policies, practices, or procedures caused any alleged constitutional injury to Joshua Harvey.

7. Defendants deny there is any direct causal link which supports Plaintiff's claims that any policy or custom, or the alleged failure of the City to adopt a policy or custom, or to adequately train or supervise Defendants or any other City employee was the direct cause of any damage or injury to Plaintiff.

8. Defendants did not have actual or constructive notice that their actions or failure to act were substantially certain to result in a violation of Joshua Harvey's constitutional rights, nor did the Defendants consciously or deliberately choose to disregard any such risk of harm.

9. Absent a properly proven predicate constitutional violation by an individual defendant, the City cannot be held liable under Section 1983 for alleged failures of policy, training or supervision.

10. The City or its final policy makers, including Charles Jordan, did not act or fail to act in any way that would have ratified any alleged constitutional violation or the basis for any such allegations. The City's enforcement of the City's policies was not the moving force behind any alleged constitutional violations.

11. The City is not subject to vicarious or *respondeat superior* liability.

12. Plaintiff's claims are or may be barred by applicable statute(s) of limitations.

13. The need for further training or supervision was not so obvious to the policymaking officials as to support liability.

14. Plaintiff fails to state a claim for supervisory liability against defendants because Joshua Harvey's constitutional rights were not violated and no actions of Defendant Jordan or any final policy-maker was the cause of any alleged constitutional violation. Defendant Jordan did not act with recklessness or deliberate indifference to Joshua Harvey's constitutional rights. Further, Defendant Jordan did not know of or acquiesce to any alleged violation of Joshua Harvey's constitutional rights and Defendant Jordan's actions were not negligent in any manner.

15. The defendants' actions were at all times reasonable under the circumstances.

16. There is no evidence that the Defendants acted with any malice towards Plaintiff.

17. The damages complained of may have been caused in whole or in part by third parties over whom the City exercises no control.

18. Plaintiff fails to allege a sufficient basis for policy, pattern and custom warranting the imposition of liability.

19. Defendants, at all relevant times, had probable cause for any and all actions taken and acted at all times defendants' actions were objectively reasonable, in good faith, and without malice.

20. The City is not jointly and severally liable.

21. The doctrine of collateral estoppel/issue preclusion bars liability against the defendants.

22. The doctrine of waiver bars liability against the defendants.

23. Plaintiff cannot recover punitive damages against the City.

24. Plaintiff's claim for punitive damages are further barred by Oklahoma and United States Constitutions.

25. Plaintiff's state law causes of action are or may be barred in whole or in part by the Oklahoma Governmental Tort Claims Act, , 51 O.S. §§ 151 *et seq.*

26. Joshua Harvey's violent actions were the legal cause of his injuries.

27. Plaintiff's claims may be barred, in whole or in part by the Oklahoma Governmental Tort Claims Act.

28. The Plaintiff's claims are barred by the doctrine of contributory negligence.

29. The Plaintiff's claims are barred by the doctrine of assumption of the risk.

30. The Plaintiff's claims are barred because Joshua Harvey's death was caused by pre-existing conditions, including his severe atherosclerotic cardiovascular disease, cardiomegaly, and kidney disease.

31. The City is not jointly and severally liable.

32. Plaintiff's claims for damages are barred by the equitable doctrine of Unclean Hands.

33. Plaintiff's claims for damages are barred because Joshua Harvey's death was caused by methamphetamine toxicity and pre-existing health conditions.

34. Plaintiff fails to state a cause of action because defendants did not violate Joshua Harvey's Fourth or Fourteenth Amendment rights under the constitution.

35. Plaintiff fails to state a cause of action under the Americans with Disabilities Act, 42 U.S.C. §12101-213 as this statute prohibits discrimination against people with disabilities in employment, transportation, public accommodations, communications and access to state and local government programs and services. Any such claim of violation is not the legal cause of Plaintiff's damages.

36. Plaintiff fails to state a cause of action for Wrongful Death.

37. Plaintiff fails to state a cause of action for Plaintiff's Survivor claim.

38. All tort claims against the City are subject to the requirements of the Oklahoma Government Tort Claims Act. The City demands strict compliance therewith.

39. Any claim for damages under the Tort Claims Act is limited to the caps set forth in the GTCA: $175,000.00 for personal injuries.

40. Plaintiff's claim for injuries is or may be barred in whole or in part by the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151 *et seq.*

41. The alleged physical conditions complained of are the natural, probable and proximate result of the physical condition, anatomy, and physiology of Joshua Harvey, and any injuries or damage which he may have sustained were not the result of any act or omission on the part of the defendants.

  B. Defendant AMRAS

1. Defendant AMRAS denies all claims and allegations against it.
2. AMRAS affirmatively denies the care and treatment provided was negligent in any respect and was instead in accordance with the prevailing standard of care.
3. AMRAS denies that any of its agents, servants or employees was negligent in any way concerning the care and treatment of the deceased, Mr. Harvey.
4. AMRAS states that all of the care and treatment provided meets or exceeds the applicable standard of care.
5. AMRAS asserts that the damages allegedly sustained by the deceased were alternatively caused by his general medical conditions, diseases, infections, or injury and/or the result of pre-existing,

      unforeseeable or unavoidable complications due to the underlying conditions or injury of the deceased for which AMRAS is not responsible.

6. AMRAS asserts that the damages allegedly sustained in this case are limited by the Affordable Access to Healthcare Act and by Okla. Stat. tit. 12, § 3009.1 and by Okla. Stat. tit. 23, §61.2.
7. Should AMRAS be found to have breached the standard of care in any respect, which is not admitted but is expressly denied, AMRAS states that any such breach was not the proximate cause of the deceased's medical outcome.
8. AMRAS affirmatively asserts that any damages sustained by the deceased were due to other unrelated conditions and/or the result of unperceivable and unavoidable complications due to the underlying conditions of the deceased for which AMRAS is not responsible.
9. For further answer and defense, AMRAS states that the deceased's condition was the result of an unavoidable incident, casualty and/or misfortune occurring without fault on the part of AMRAS.
10. In the alternative, AMRAS states that the alleged injuries to the deceased were proximately caused by the negligence of third parties over whom AMRAS had no control and for whom AMRAS was not responsible.
11. AMRAS is entitled to a credit or offset for all consideration paid to Plaintiff by virtue of any type or form of settlement agreement entered into by between the Plaintiff and any other party or entity in regard to this circumstance.
12. The case may also involve issues associated with "loss of chance" type claims.
13. AMRAS would request this Court dismiss Plaintiff's claim for punitive damages as there is no evidence to support a punitive damages claim against them.
14. AMRAS would state that Plaintiff's claim for punitive damages is unconstitutional and violates the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and of Article II, Section 7 of the Oklahoma Constitution for the following reasons:
15. The standards under which claims are submitted are so vague as to be effectively meaningless and threaten deprivation of property for the benefit for society without the protection of fundamentally fair procedures;
16. The highly penal nature of punitive damages threatens the possibility of excessive punishment and almost limitless liability without the benefit of fundamentally fair procedures or any statutory limitations; and,
17. The introduction of evidence of the Defendants' financial worth is so prejudicial as to impose liability and punishment in a manner bearing no relation to the extent of any injury allegedly inflicted or to any benefit to Plaintiff from any alleged wrongdoing, and therefore, any verdict would be the result of bias and prejudice in a fundamentally unfair manner.
18. AMRAS further states that Plaintiff's claim for punitive damages constitutes an unconstitutionally excessive fine under Article II, Section 9 of the Oklahoma Constitution because such highly penal sanctions may be imposed for the benefit of society under standards so vague and effectively meaningless as to threaten unlimited punishment bearing no relation to the extent of any injury allegedly inflicted at the unbridled discretion of the jury.
19. AMRAS reserves the right to amend this Answer to state differing denials, affirmative defenses, counterclaims, cross claims and/or third-party claims during the course of discovery.
20. Any and all affirmative defenses asserted by the remaining Defendants.

    C. Defenses to be Abandoned:  **None.**

**III.**    **Motions Pending** (Include Docket Number, Description and Date at Issue)**:**

    None.

IV. **Stipulations:**

    A. Jurisdiction Admitted: ☒ Yes ☐ No (If no, explain.)

    B. Venue Appropriate: ☒ Yes ☐ No (If no, explain.)

    C. Facts:

       1. Defendants Nigel Harris, Steven Douglas, Jaye Taylor, and Patrick Dunlap were employed as police officers with the City of Tulsa on the incident date;
       2. Defendant Charles Jordan was employed as the Chief of Police for the City of Tulsa's police department on the incident date;
       3. Defendant Charles Jordan was a final policymaker for the City of Tulsa on the incident date for training, investigating, and disciplining persons employed as police officers with the City of Tulsa;
       4. On the incident date, the City of Tulsa had in effect a written use of force policy;
       5. Joshua Harvey died on August 27, 2018.

    D. Law:

       1. 42 U.S.C. § 1983
       2. 51 O.S. § 151 *et seq.*
       3. Negligence (Oklahoma common law)

V. **Proposed Deadlines:**

    A. Parties to be Added by:

    September 25, 2020

    B. Proposed Discovery Cutoff Date (4 Months of Discovery Unless Extended by the Court for Good Cause):

    May 3, 2021

    C. Fact Witness Lists to be Exchanged by:

    January 22, 2021

    D. Proposed Date for Expert Reports by Plaintiff and Defendant:

    Plaintiff: February 5, 2021
    Defendants: March 26, 2021

**VI.     Fed. R. Civ. P. 26(f) Discovery Plan**

A.  Should any changes be made to the timing, form or requirements for disclosures under Rule 26(a)?    ☐ Yes (If yes, explain.) ☒ No

B.  When were or will initial disclosures under Rule 26(a)(1) be made?  September 8, 2020

Note that pursuant to Rule 26(a)(1), initial disclosures must be made within 14 days after you confer for the purpose of preparing this discovery plan.  All parties are under an affirmative duty to (i) comply with the mandatory disclosure requirements, and (ii) notify the Court of any non-disclosure so that the issue can be promptly referred to a magistrate judge for resolution.  Failure of any party to disclose information or failure of any party to bring disclosure issues to the Court's attention in a timely manner may result in sanctions, including prohibiting the use of that information at trial pursuant to Rule 37(c)(1).

C.  Should discovery be conducted in phases and/or should discovery be limited at this time to particular subject matters or issues?    ☐ Yes    ☒ No

D.  Should any changes be made in the limitations on discovery imposed by the Federal Rules of Civil Procedure or the Local Civil Rules?
☐ Yes (If yes, explain.)
☒ No

E.  Proposed Number of Fact and Expert Depositions:

1.  To be allowed for Plaintiff?  10/5

2.  To be allowed for City of Tulsa Defendants?  10/5

3.  To be allowed for Defendant AMRAS? 10/5

F.  Is there a need for any special discovery management order(s) by the Court?
☐ Yes (If yes, explain.)
☒ No

G.  The parties are directed to Guidelines for Discovery of Electronically Stored Information on the public website at www.oknd.uscourts.gov for advice on the production of electronic information.

**VII.    Anticipated Dispositive Motions?**
☒ Yes (If yes, describe.)
☐ No

    Defendants anticipate filing dispositive motions.

VIII. **Do all parties consent to trial before the assigned magistrate judge?**  ☐ Yes  ☒ No

  If yes, please email a proposed Consent to Magistrate for Trial (AO-085) to the Clerk via the designated mailbox at CM-ECFIntake_OKND@oknd.uscourts.gov and indicate the month and year in which trial by the magistrate judge is requested. Please do not file proposed documents as an attachment to a document. (Refer to Section XIV of the CM/ECF Administrative Guide of Policies and Procedures for further instruction regarding proposed documents.)

IX. **Is there any matter that should be referred to the assigned magistrate judge for final disposition upon partial consent of all the parties pursuant to Local Rule 73.1?**
☐ Yes ☒ No

  If yes, please email a completed, proposed Consent to Magistrate Disposition Motion (AO 085A) to the Clerk via the designated mailbox at CM-ECFIntake_OKND@oknd.uscourts.gov. Please do not file proposed documents as an attachment to a document. (Refer to Section XIV of the CM/ECF Administrative Guide of Policies and Procedures for further instruction regarding proposed documents.)

X. **Settlement Plan** (Check one):

  ☒ Settlement Conference Requested After:  Close of discovery. Defendants request a conference **after** ruling on dispositive motions.

  Describe Settlement Judge Expertise Required, If Any:  Civil rights.

☐ Private Mediation Scheduled On:

☐ Other ADR (Explain):

☐ ADR Appropriate:
 ☐ Yes
 ☐ No (If no, explain.)

Copy of the Court's ADR Booklet Provided to Clients as Required?

  Plaintiffs: ☒ Yes ☐ No

  Defendants: ☒ Yes ☐ No

XI. **Does this case warrant special case management?**
☐ Yes (If yes, explain.)

☒  No

XII.  **Do the parties request that the Court hold a scheduling conference?**  ☐ Yes  ☒ No

If a conference is not requested or ordered by the Court, the Court will, after receiving this report, issue a scheduling order based on the information contained in this report.

XIII.  **Estimated Trial Time:**  4-5 days

**ATTORNEYS FOR PLAINTIFF**

/s/Damario Soloman-Simmons
Damario Solomon-Simmons
Solomon-Simmons Law
601 South Boulder Avenue, Suite 600
Tulsa, OK 74119
dss@solomonsimmons.com

and

J. Spencer Bryan
Steven J. Terrill
Bryan & Terrill Law, PLLC
9 East 4th Street, Suite 307
Tulsa, OK 74103
jsbryan@bryanterrill.com
sjterrill@bryanterrill.com

**ATTORNEYS FOR CITY OF TULSA, HARRIS, DOUGLAS, TAYLOR, DUNLAP, JORDAN**

/s/ Michelle McGrew
David E. O'Meila, OBA 6779
City Attorney
Gerald M. Bender, OBA #14471
Litigation Division Manager
T. Michelle McGrew, OBA #20279
Kristina L. Gray, OBA #21685
Senior Assistant City Attorneys
City Hall, One Technology Center
175 East Second Street, Suite 685
Tulsa, Oklahoma 74103
(918) 596-7717 Telephone
(918) 596-9700 Facsimile
domeila@cityoftulsa.org

9

gbender@cityoftulsa.org
mmcgrew@cityoftulsa.org
kgray@cityoftulsa.org

**ATTORNEYS FOR AMRAS**

/s/Lindsey Albers
Nathan E. Clark, OBA # 17275
Lindsey E. Albers, OBA #19394
Rhodes, Hieronymus, Jones,
Tucker & Gable, PLLC,
Two West 2nd Street, Suite 1000
P.O. Box 21100
Tulsa, OK 74121-1100
Telephone:  918/582-1173
Facsimile:   918/592-3390
nclark@rhodesokla.com
lalbers@rhodesokla.com